**UNITED STATES of America, Appellee,**

v.

**Clyde SMITH, Appellant.**

**No. 80–1586.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Dec. 23, 1980.

David H. Jones, Springfield, Mo., for appellant.

Robert G. Ulrich, Asst. U. S. Atty., Springfield, Mo., for appellee.

Before LAY, Chief Judge, BRIGHT and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Clyde Smith appeals from a judgment entered in the district court [1] for the Western District of Missouri upon a jury verdict finding him guilty of one count of obstruction of justice in violation of 18 U.S.C. § 1503. Appellant was sentenced to five years imprisonment. For reversal appellant argues that the district court erred in (1) admitting certain tape recordings into evidence, (2) failing to adequately instruct the jury, and (3) giving a supplemental *Allen* charge. For the reasons discussed below, we affirm the judgment of the district court.

In early 1980, the federal grand jury for the Western District of Missouri was investigating an interstate cattle rustling operation allegedly involving appellant, Chuck Friend, Lonnie Hargis, Ms. Jerry Hargis, John Nunneley, and Frankie Dean Cooper, an informant working with the Dade County Sheriff's Office. On February 19, 1980, Ms. Hargis received a subpoena to appear before the federal grand jury in Kansas City, Missouri, on March 10, 1980. A day or two later, Ms. Hargis informed appellant that she had received a subpoena. On February 25, 1980, appellant, Friend and Nunneley had a telephone conversation during which they discussed killing Ms. Hargis in order to prevent her appearance before the federal grand jury. Several days later, Friend and Cooper discussed arranging the killing; Cooper was to contact people in St. Louis; the contemplated price was $4,000. Cooper relayed this information to the county sheriff's office, which in turn contacted the Springfield Police Department and the local Bureau of Alcohol, Tobacco and Firearms (ATF). Springfield police officer Chester Waterhouse and ATF special agent Robert Stumpenhaus assumed the roles of the "hit men."

On March 3, 1980, Friend met twice with the undercover officers. They discussed the contract, the location of Ms. Hargis' house and the method of payment. Friend paid the officers $2,000; he had received this money from appellant. On March 4, 1980, with her cooperation, the officers staged and photographed the killing of Ms. Hargis. On March 6, 1980, the officers had arranged to meet Friend in a motel parking lot. When Friend drove up accompanied by appellant, the officers left because officer Waterhouse feared that appellant would recognize him. On March 9, 1980, the officers finally met Friend and appellant. Agent Stumpenhaus, Friend and appellant discussed the killing. Stumpenhaus showed the photographs to Friend and appellant. Appellant directed Friend to pay the balance of the contract price. Unknown to appellant and Friend, agent Stumpenhaus was recording their conversation.

Ms. Hargis subsequently appeared before the federal grand jury on March 11, 1980, and testified about the cattle rustling operation.

I.  *Tape Recordings, Use of Transcripts*

Appellant first argues the district court erred in admitting two tape recordings into evidence. The government introduced a tape recording of the March 9, 1980, conversation (Plaintiff's Exhibit # 7) and a processed version [2] of the same tape (Plaintiff's Exhibit # 11). Copies of the transcript prepared by agent Stumpenhaus from the tape were passed to the jury at the time the tapes were played. Appellant argues that agent Stumpenhaus failed to properly identify the speakers on the tape and thus failed to establish a proper foundation [3] for the introduction of the tape. We disagree.

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. Frederick A. Lundgren, Chief of the Audio Engineering Section of the National Laboratory Center for ATF, testified that Plaintiff's Exhibit # 11 was produced by playing the original tape through a speech recovery console. The speech recovery console process removes static and improves voice quality. The original tape remained unaltered.

3. This court in *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), set forth the following requirements for the proper foundation for the introduction of evidence obtained by electronic monitoring:

■ "The standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. Rizzo*, 492 F.2d 443, 448 (2d Cir.), *cert. denied*, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974); *accord, United States v. Kirk*, 534 F.2d 1262, 1277 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *United States v. McMillan*, 508 F.2d 101, 105 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Here, agent Stumpenhaus testified in great detail about the conversation of March 9, 1980, and about the circumstances surrounding the tape recording and expressly testified that he was able to identify the speakers on the tape. Agent Stumpenhaus also testified that he had heard Friend's voice several times and appellant's voice twice before he prepared the transcript from the March 9, 1980, tape recording. Agent Stumpenhaus was the undercover officer who directly participated in the March 9, 1980, conversation. We conclude that the record in the present case clearly meets the standard for voice identification and thus a proper foundation for the introduction of the tape recordings was established.

■ Appellant stresses that agent Stumpenhaus was not an expert in voice identification and that the audio quality of the tape recording, even after processing, was poor. We note, however, that the accuracy of the agent's voice identification is a question for the jury. *See United States v. Kirk, supra*, 534 F.2d at 1277. Appellant did testify in the present case and the jury thus had ample opportunity to compare appellant's voice with the tape recording and to evaluate the accuracy of the agent's voice identification.

(1) That the recording device was capable of taking the conversation now offered in evidence.
(2) That the operator of the device was competent to operate the device.
(3) That the recording is authentic and correct.
(4) That changes, additions or deletions have not been made in the recording.

■ Appellant further argues that the district court failed to instruct the jury that "differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference," citing to *United States v. McMillan, supra*, 508 F.2d at 106. Appellant did not object to the cautionary instruction given by the district court or request a more specific instruction at the time the transcripts were distributed and the tape recordings were played. Appellant thus failed to properly preserve this question for review. Had appellant properly preserved the question for review, however, we would have found appellant's argument to be without merit. The record indicates that the district court repeatedly admonished the jury that the transcripts were not evidence,[4] that only the tape recordings constituted the evidence, and that what was heard and understood from the tape recordings was the only evidence they were to consider. *See, e. g., United States v. John*, 508 F.2d 1134, 1141 (8th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975). In the final instructions to the jury, the district court expressly stated that any differences were to be resolved solely by consideration of the tape recordings.

## II. *Jury Instructions*

Appellant next argues that the district court failed to adequately instruct the jury on the definition of the word "knowledge." The word "knowledge" appears several times in the instructions. Appellant argues that "knowledge" is not a word of common usage or self-explanatory and therefore should have been defined for the jury. We disagree.

(5) That the recording has been preserved in a manner that is shown to the court.
(6) That the speakers are identified.
(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

4. The transcripts were not admitted into evidence.

Appellant has not properly preserved this question for review. The government submitted an instruction (Plaintiff's Requested Instruction # 5) which evidently defined "knowingly." [5] The district court declined to give this instruction. Appellant did not object to the district court's refusal or offer a proposed instruction defining "knowledge." Appellant did object to the government's requested instruction on the elements of the offense (Plaintiff's Requested Instruction # 12), but that objection was satisfied by the amendment (as underlined) of the instruction to read in part: "That *the defendant then had knowledge that* Jerry Hargis was then under subpoena to appear before a Federal Grand Jury . . . ." Appellant did not raise the district court's failure to define "knowledge" in his post-trial motions.

In any event, considering the question on the merits, the district court's failure to define "knowledge" was not er-ror, much less plain error. The word "knowledge" as used in the instruction on the elements of the offense is a word of common usage and thus within the ordinary understanding of a juror. The district court was under no obligation to define words within the ordinary understanding of the jury. *E. g., Bohn v. United States,* 260 F.2d 773, 778 (8th Cir. 1958), *cert. denied,* 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959).

### III. *Allen Charge*

Appellant finally argues that the district court erred in giving a supplemental *Allen* [6] charge. Appellant does not challenge the giving of the *Allen* charge as error *per se,*[7] but argues the district court gave the *Allen* charge prematurely and thus improperly coerced the jury into returning a guilty verdict.

Here, the jury began deliberating late in the afternoon (about 4:20 p. m.). About

---

5. Plaintiff's Requested Instruction # 5 was not reproduced in the record on appeal. The district court and both counsel refer in the trial transcript to Plaintiff's Requested Instruction # 5 as defining "knowingly."

6. So called after *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

7. [This circuit has] recognized the possibility of coercion presented by use of the *"Allen"* charge, but ha[s] approved its use as part of the original charge or as a supplemental charge. And, although frequently requested, we have declined to prohibit its use. However, we have indicated a preference for giving the charge as a part of the regular instructions before a deadlock has occurred. *United States v. Wiebold,* 507 F.2d 932, 934 (8th Cir. 1974) (citations omitted); *see also United States v. Skillman,* 442 F.2d 542, 558 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *Hodges v. United States,* 408 F.2d 543, 552 (8th Cir. 1969) (Blackmun, J.).

The writer continues to oppose the use of the *Allen* charge. It is my opinion, based upon sixteen years' experience as a state trial judge and six years' experience as a state appellate judge, that the *Allen* charge in all its forms, whether given as part of the original charge or as a supplemental charge, is inherently coercive. *See, e. g., State v. Voyles,* 561 S.W.2d 697, 699 & n.1 (Mo.App.1978) (McMillian, J.); *see also United States v. Scruggs,* 583 F.2d 238, 242 (5th Cir. 1978) (Coleman, J., concurring);

*Thaggard v. United States,* 354 F.2d 735, 739–41 (5th Cir. 1965) (Coleman, J., concurring), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). Moreover, "the use of the *Allen* Charge is an invitation for perennial appellate review." *United States v. Fioravanti,* 412 F.2d 407, 420 (3d Cir.) (prospective disapproval of *Allen* charge), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *accord, Andrews v. United States,* 309 F.2d 127, 129 (5th Cir. 1962) (Wisdom, J., dissenting), *cert. denied,* 372 U.S. 946, 83 S.Ct. 939, 9 L.Ed.2d 970 (1963) ("The *Allen* Charge causes more trouble in the administration of justice than it is worth. . . . 'Like Banquo's ghost it will not remain at rest.' "), *citing State v. Voeckell,* 69 Ariz. 145, 210 P.2d 972 (1949) (Udall, J.). *See also United States v. Pope,* 415 F.2d 685, 690 (8th Cir. 1969) (noting increasingly frequent attacks against *Allen* charges on appeal), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970). However, the Supreme Court has not reversed *Allen v. United States.* This circuit in *United States v. Skillman, supra,* 442 F.2d at 558- 60, and several other circuits have approved versions of a modified *Allen* charge modelled after that developed by the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 5.4, commentary (1968). *See United States v. Beattie,* 613 F.2d 762, 767 nn.1 & 2 (9th Cir.) (Browning, J., concurring) (listing circuits), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).

5:00 p. m., the jury foreperson advised the district court that the jury would not reach a verdict within the next twenty or thirty minutes. The district court then excused the jury. The jury resumed deliberations about 9:00 a. m. the following morning; the district court excused the jury at about 11:30 a. m. for lunch. At about 1:00 p. m., the district court *sua sponte* gave the challenged instruction. *See* appendix below. About forty-five minutes later (as stated by defense counsel during oral argument), the jury returned a guilty verdict. Neither party requested a supplemental instruction and there was no indication that the jury was deadlocked. The jury did request copies of the original instructions. Appellant made a timely objection to the *Allen* charge.

■ Although we agree that the *Allen* charge was given prematurely,[8] we conclude that the instruction had no coercive effect under the circumstances and therefore find no reversible error. *See United States v. Stover*, 565 F.2d 1010, 1016-17 (8th Cir. 1977); *accord, United States v. Beattie*, 613 F.2d 762, 765-66 (9th Cir.), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980) ("Thus, an examination of the instruction under all the circumstances reveals no coercion. Any prematurity of the instruction, therefore could not be sufficient to warrant reversal."); *United States v. Smith*, 521 F.2d 374, 376–77 (10th Cir. 1975); *United States v. Martinez*, 446 F.2d 118, 119–20 (2d Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1971). "The primary reason for judicial disfavor of an *Allen* charge ... is its potentially coercive effect upon those members of a jury holding to a minority position at the time of

the instruction." *United States v. Beattie, supra*, 613 F.2d at 764, *citing United States v. Fioravanti*, 412 F.2d 407, 416–17 (3d Cir.), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).

The Ninth Circuit in *United States v. Beattie* identified several factors which it found useful in determining whether an *Allen* charge had a coercive effect upon the jury: (1) the content of the challenged instruction, (2) the length of the period of deliberation following the *Allen* charge, (3) the total time of deliberation, and (4) any indicia in the record of coercion or pressure upon the jury. 613 F.2d at 765–66.

■ Here, the challenged instruction was essentially that approved by this court in *United States v. Skillman*, 442 F.2d 542 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971), although somewhat embellished by the district court. *See* appendix below. In particular we note that the district court expressly recognized the possibility that a majority of the jurors may have favored acquittal, that the government has the burden of proof beyond a reasonable doubt, that the majority as well as the minority should reexamine their positions, that no juror was to yield a conscientiously held conviction, and that the jurors could continue to deliberate as long as they required.

The jury returned its guilty verdict within forty-five minutes after receiving the supplemental instruction. We have refused to find a coercive effect in cases in which jury verdicts were returned after comparable periods of post-*Allen* charge deliberation. *See United States v. Dawkins*, 562 F.2d 567, 570 (8th Cir. 1977) (per curiam) (45 minutes); *United States v. Chrysler*, 533

---

**8.** The jury had deliberated approximately three hours before the *Allen* charge was given. Of course, the length of time a jury may deliberate is a matter within the sound discretion of the trial judge. *E. g., United States v. Pope, supra*, 415 F.2d at 690. Further, "jury difficulty in reaching a verdict, sufficient to warrant an *Allen* charge, may be shown other than by specific statements from the jury. For example, a jury deliberating eight hours on a very simple factual issue may in itself show such difficulty." *United States v. Beattie, supra*, 613

F.2d at 764, *citing Sullivan v. United States*, 414 F.2d 714, 716 (9th Cir. 1969). However, we can find no indication in the record in the present case that the jury was deadlocked or otherwise in difficulty and therefore conclude that the *Allen* charge was premature. *See United States v. Stover*, 565 F.2d 1010, 1016 (8th Cir. 1977) (*Allen* charge given after two hours of deliberation); *United States v. Flannery*, 451 F.2d 880, 883 (1st Cir. 1971) (*Allen* charge given after three hours, *sua sponte*, without any report of difficulty).

F.2d 1055, 1057 (8th Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976) (20 minutes); *United States v. Ringland*, 497 F.2d 1250, 1253 (8th Cir. 1974) (30–40 minutes).

The jury deliberated for a total of nearly four hours. Taking into consideration the length of the trial (about two days) and the degree of complexity of the case before the jury, we cannot say that the total period of deliberation was so disproportionate as to raise an inference that the *Allen* charge coerced the jury. Nor can we find any indication of coercion in the record. In fact, as discussed above, the district court gave the *Allen* charge prematurely, unaware of any deadlock in the jury, and thus could not have been directing the instruction to any minority jurors.

Finally, in view of the above discussion, we take this opportunity to encourage the district courts in this circuit to consider with particular care before giving an *Allen* instruction whether such an instruction is absolutely necessary under the circumstances.

Accordingly, the judgment of the district court is affirmed.

### APPENDIX

The district court gave the following instruction:

Now, members of the jury, the Court wishes to suggest to you a few thoughts which you may desire to consider in your deliberations along with the evidence in the case and all the other instructions which I have given you.

This is an important case. The trial has been expensive in time and effort and money to both the defendant and the prosecution. If you should fail to agree on a verdict, the case is left open and undecided, and like all cases, it must be disposed of at some time.

There appears no reason to believe that another trial would not be costly to both sides nor does there appear any reason to believe that the case can be tried again by either side better or more exhaustively than has been tried before you. Any future jury must be selected in the same manner and from the same source as you have been chosen.

So there appears to be no reason to believe that the case would ever be submitted to 12 men and women more conscientious, more impartial or more competent to decide it or that more or clearer evidence could be produced on behalf of either side.

Of course, these things suggest themselves upon the brief reflection to all of us who have sat through this trial. The only reason I'm mentioning this now is because some of them may have escaped your attention which must have been fully occupied up to this time in reviewing the evidence in the case. They are matters which, along with other and perhaps more obvious ones remind us how desirous it is that you unanimously agree upon a verdict. As stated in the instructions at the time the case was submitted to you, you must not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict.

However, it is your duty as jurors to consult with one another and to deliberate with a view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself but you should do so only after consideration of the evidence in the case with your fellow jurors.

And in the course of your deliberations, you should not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous. In order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor and frankness and with proper deference and regard to the opinion of others. That is to say in conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to re-examine your own views.

If much the greater number of you are for conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one since it makes no effective impression upon the minds of many equally conscientious, honest fellow jurors who bear the same responsibility, serve under the same oath and heard the same evidence with the same attention to and equal desire to arrive at the truth. On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought seriously to ask themselves again and most thoughtfully whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors and whether they should not distrust the weight and sufficiency of the evidence that fails to convince the minds of several of their fellows beyond a reasonable doubt.

You are not partisans, you are judges, judges of the facts. Your sole interest here is to seek the truth from the evidence in the case. You are the exclusive judges of the credibility of the witnesses and the weight and effect of the evidence. In the performance of this high duty, you are at liberty to disregard all comments of both Court and counsel, including, of course, the remarks I am now making.

Remember at all times no juror is expected to yield a conscientious conviction he or she may have as to the weight of the effect of evidence. But remember, also, that after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience.

Remember, too, that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.

In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is on the government.

Above all, keep constantly in mind that unless your final conscientious appraisal of the evidence in the case clearly requires it, the accused should never be exposed to the risk of having to run twice the gauntlet of a criminal prosecution and to endure a second time the mental, emotional and financial strain of a criminal trial.

You may conduct your deliberations as you choose. But I suggest that you now carefully re-examine and reconsider all the evidence in the case bearing upon the questions before you. You may be as leisurely in your deliberations as the occasion may require and you shall take all the time which you may feel is necessary.

You may now retire to conclude your deliberations in such manner as shall be determined by your good and conscientious judgment as reasonable men and women.