UNITED STATES of America, Appellee,

v.

Kenneth Paul HOLLISTER, Appellant.

No. 84–5032.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1984.

Decided Oct. 11, 1984.

Rehearing Denied Nov. 5, 1984.

Scott F. Tilsen, Asst. Public Defender, Minneapolis, Minn., for appellant.

Elizabeth de la Vega, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and COLLINSON,* Senior District Judge.

LAY, Chief Judge.

Kenneth Hollister appeals from his jury conviction of bank robbery in violation of 18 U.S.C. § 2113(a) (1982). Hollister raises several issues on appeal: he asserts that the district judge (1) erred in excluding relevant evidence; (2) denied Hollister a fair trial in giving the jury improper instructions, (3) required an excessive bond, and (4) erred in declining to disqualify himself from the trial.

**Facts**

On September 28, 1983, Hollister, age 20, and Roger Miller, age 49, robbed the Brooklyn Park Bank. Hollister and Miller had known each other for approximately nine years; Hollister testified that Miller became a "father figure" to him after his parents were divorced.[1] Hollister, living and working for his father in Arizona in September of 1983, testified that he came to Minnesota on September 19 to visit friends and collect a $300 debt from Miller. Neither Hollister's mother, still living in Minnesota, nor his father knew the defendant was in Minnesota. Although Hollister told a friend he was only planning a two-

---

* The HONORABLE WILLIAM C. COLLINSON, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

1. Hollister was raised in Minnesota, and moved to Arizona in late 1983.

day visit, he stayed in Minneapolis for over a week, partially at the expense of Miller.[2]

Hollister did not deny that he had participated in the bank robbery. Instead, he claimed that Miller had forced him to rob the Brooklyn Park Bank. Hollister testified that as he and Miller were driving in Miller's car, Miller pointed a gun at him and said, "We're going to rob that bank." Miller allegedly forced defendant to don a jumpsuit and mask, and gave Hollister a gun, telling him it was not loaded.[3] Hollister and Miller then entered the bank. Hollister jumped over a teller window, pointed a gun at the teller,[4] and demanded money. Witnesses testified that Hollister showed no nervousness, and handled the gun with ease. Miller, concentrating on controlling the bank employees and customers, rarely glanced in Hollister's direction during the robbery.

Leaving the bank, Hollister and Miller drove a stolen vehicle to a parking lot, and were soon located by police officers. The officers ordered Hollister and Miller to throw down their guns and leave the vehicle but neither man emerged. Miller shouted that he would not be taken alive, and shot himself in the head. Hollister finally threw out a fully loaded and cocked gun, and exited the car. Hollister was taken into custody, and bond was set at $50,000.[5]

**Discussion**

**A. Exclusion of Evidence Offered by Defendant**

Hollister argues that the court erred in excluding evidence relevant to his defense

of duress.[6] The defendant wanted to introduce evidence that Miller was suspected of involvement in several other bank robberies with similar modus operandi. Hollister sought to establish that the other robberies had been committed with another young man named William Schumacher.[7] Hollister admitted that he was unaware of Miller's alleged involvement in other robberies.

Hollister argues on appeal that the excluded evidence should have been admitted because it would "tend to make more probable the existence of the claim that Schumacher had backed out and thus Miller was motivated to coerce Hollister into robbing a bank more likely than not * * * ." Although the definition of "relevant evidence" given in Federal Rule of Evidence 401 is broad, it does have limits. Evidence must be probative of a fact of consequence in the matter, and must have a tendency to make the existence of that fact more or less probable than it would have been without the evidence. *See* Fed. R.Evid. 401. Under the Federal Rules of Evidence, the trial judge has broad discretion in determining relevancy and admissibility. *United States v. Bernhardt*, 642 F.2d 251, 253 (8th Cir.1981) (per curiam); *United States v. Johnson*, 516 F.2d 209, 214 (8th Cir.1975), *cert. denied*, 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975).

A duress defense requires the defendant to show that a reasonable or well-founded fear of immediate or imminent death or serious bodily harm required the defendant to commit the criminal act, and

---

**2.** Hollister testified that he remained in Minneapolis for a longer period because Miller kept promising he would pay the $300 debt owed the defendant. The combined cost of Hollister's lodgings and bus tickets, however, was almost $300, rendering satisfaction of the debt valueless.

**3.** Hollister and Miller used a stolen vehicle to commit the robbery. Hollister claimed he could not remember how he got from Miller's car to the stolen vehicle.

**4.** Claiming a second blackout, Hollister testified that he did not remember pointing a gun at the teller.

**5.** Hollister's application for bond reduction was denied by the district court. Hollister did not appeal.

**6.** The government objected to defendant's evidence as irrelevant, lacking foundation, hearsay, and excludable under Fed.R.Evid. 403. Excluding the evidence as irrelevant, the court did not reach the government's other objections.

**7.** Hollister also offered evidence showing the state of Miller's finances and that Schumacher had lied about the source of sudden wealth.

that the defendant could not avoid the danger. The defendant must also surrender when the threat abates. *See United States v. Campbell,* 609 F.2d 922, 924 (8th Cir. 1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980); *United States v. Saettele,* 585 F.2d 307, 309 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 14.16 (3d Ed.1977) (hereinafter referred to as Devitt & Blackmar); W. La-Fave & A. Scott, Jr., *Handbook on Criminal Law* 377 (1972); *see also* Model Penal Code § 2.09 (Proposed Official Draft 1962). Evidence showing Roger Miller's propensity to commit bank robberies would not have been relevant unless it contributed to Hollister's reasonable fear or death or serious bodily harm. In the present case, Hollister conceded that he did not know about Miller's illegal activities. *See United States v. Stanfa,* 685 F.2d 85, 89 (3d Cir. 1982) (affirming the district court's exclusion of defendant's duress-related evidence because defendant did not learn of gangland-style killings occurring while defendant was making false declarations before the grand jury until after his testimony). We find the district court did not abuse its broad discretion in determining Hollister's offered evidence to be irrelevant and inadmissible.

### B. Presumption of Innocence Jury Instruction

Hollister also argues that the district court's jury instruction on the presumption of innocence denied him due process of the law. Hollister states that the jury instruction was deficient in not telling the jury that the presumption of innocence is sufficient to acquit a defendant unless the presumption is overcome by proof beyond a reasonable doubt.[8]

■ In *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), the Supreme Court held that a state criminal defendant was denied his due process rights when the trial court refused to give a requested instruction on the presumption of innocence. The Court explained that although the phrase "presumption of innocence" is not a constitutional requirement, an instruction on the presumption of innocence is "one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." *Taylor,* 436 U.S. at 486, 98 S.Ct. at 1935 (footnote omitted). In *Kentucky v. Whorton,* 441 U.S. 786, 790, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979) (per curiam), *reh'g. denied,* 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979), the Court stated that a court must determine in each case whether failure to give a presumption of innocence instruction denied the defendant "due process of the law in light of the totality of the circumstances."[9]

■ Counsel for Hollister requested a presumption of innocence instruction from Devitt & Blackmar § 11.14, but failed to object to the instruction actually used by the court.[10] Because Hollister's counsel

---

8. The district court followed Pattern Jury Instruction 3A prepared by the Committee on Pattern Jury Instructions of the District Judges Association of the Fifth Circuit (1983). In relevant part, the instruction read:

> Now, the indictment or formal charge against the defendant is not evidence of guilt. Indeed, the defendant is presumed by the law to be innocent. The law does not require the defendant to prove his innocence or produce any evidence at all. The government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so, you must acquit him.

9. Factors considered in evaluating the effect of a failure to give an instruction on the presumption of innocence include (1) all the instructions to the jury, (2) the arguments of counsel, and (3) whether the weight of the evidence was overwhelming. *See Whorton,* 441 U.S. at 789, 99 S.Ct. at 2089.

10. Counsel for Hollister did make a general request for a change in the jury instructions but focused on the reasonable doubt segment:

> Counsel: [I]s there a presumption of innocence instruction in this group we just went through? I'm looking at proof beyond a reasonable doubt.
> Court: Isn't it there?
> Counsel: I guess the first paragraph says, "Indeed the defendant is presumed by law to be innocent."

**424**

did not state distinctly his objection and his grounds for objection to the presumption of innocence instruction, the district court's instructions must be evaluated under the "plain error" standard. *See United States v. Jensen,* 561 F.2d 1297, 1301 (8th Cir. 1977); *West v. United States,* 359 F.2d 50, 53 (8th Cir.1966), *cert. denied,* 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966); Fed.R.Crim.P. 52(b); Fed.R.Crim.P. 30. Hollister must show that "the trial court's actions affected his 'substantial rights' resulting in a miscarriage of justice." *West,* 359 F.2d at 53 (citations omitted).

■ Combining the "plain error" standard and the *Whorton* totality of the circumstances test, we think it evident that the presumption of innocence instruction did not deny Hollister his due process rights. Hollister's counsel argued adequately Hollister's defense, and the prosecutor did not attempt to make improper arguments to the jury. *Cf. United States v. Fernandez,* 496 F.2d 1294 (5th Cir.1974) (evaluating effect of prosecutor's prejudicial final argument on defendant's conviction). The weight of the evidence against Hollister was strong; a jury could reasonably have found that defendant, without coercion, robbed the Brooklyn Park Bank.

■ We note that the Fifth Circuit pattern instruction mentions the presumption only once in its explanation of the government's burden of proof and the definition of "reasonable doubt." In contrast, the Devitt & Blackmar instruction emphasizes the importance of the presumption of innocence. It reads:

The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 11.14 (3d Ed. 1977). The clarity of the Devitt & Blackmar instruction renders it preferable to other presumption instructions; we urge its continued use. *Cf. Taylor,* 436 U.S. at 488 n. 16, 98 S.Ct. at 1936 n. 16 ("[Devitt & Blackmar § 11.14] appears to have been well suited to forestalling the jury's consideration of extraneous matters * * *.")

**C. Supplemental Communication to the Jury**

Hollister further urges that the district court erred in providing supplemental instructions which coerced the jury into ending deliberations and reaching an early verdict.[11] Hollister argues that the court's response to the jury's scheduling question implied that a quick verdict was more important than a thoughtful one, and that the prospect of deliberating "late" into the night coerced the jurors to a speedy decision. Counsel for Hollister failed to make a timely objection to this instruction.[12]

■ We agree that the court's statement should have been worded more carefully. Because no timely objection was made,

Court: Yes. The defendant is presumed by law to be innocent. That's the presumption of innocence.
Counsel: Okay. I'm thinking about your reasonable doubt instruction, trying to decide if I want to formulate some objection to it.

**11.** On the second day of jury deliberations, the court received a late afternoon query from the jury concerning scheduling "if we have not finished * * *." After confering with counsel, the court reassembled the jury before it and said:
It is my intention to keep you in your deliberations until a verdict is reached. If you have not reached unanimous agreement by late to-

night, you will be released to return again tomorrow morning at 8:30 o'clock.
The defendant did not object. Approximately three hours later, the jury returned with a verdict of guilty.

**12.** The trial transcript records the district judge as stating to counsel in chambers that he intended to tell the jury that they would return the next day if they had not reached a verdict "by *eight* tonight." In court, however, the transcript records the judge as saying, "by *late* tonight." Counsel for Hollister did not object to either version.

however, we hold that such a supplemental communication was not plain error.

In *United States v. Smith*, 635 F.2d 716 (8th Cir.1980), this court adopted a test to determine the coercive effect of challenged *Allen*-type [13] instructions on a jury. *Smith* requires the court to consider (1) the content of the instruction, (2) the length of the period of deliberation following the instruction, (3) the total time of jury deliberation, and (4) any indicia in the record of coercion or pressure upon the jury. *Id.* at 721. Applying the *Smith* test to the district court's supplemental communication, we conclude that the jury was not coerced into a premature verdict.

The content of the communication was informational. The court did not, for example, tell the jury to reach a quick decision or that a mistrial would soon be declared. *See Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam); *Goff v. United States*, 446 F.2d 623 (10th Cir.1971). The court instead urged the jury to deliberate as long as necessary. The communication was not facially coercive.

The jury considered Hollister's case for an approximate total of nine hours after a three day trial. The court conveyed the supplemental information to the jury at 5:15 p.m. The jury returned its verdict at 8:05 p.m. Estimating a one hour break for dinner, the jury deliberated for almost two hours after receiving the court's communication. This court has refused to find a coercive effect in cases with a shorter period between a supplemental instruction and the conclusion of deliberations. *See, e.g., Smith v. United States*, 635 F.2d 716 (8th Cir.1980) (forty-five minutes); *United States v. Dawkins*, 562 F.2d 567 (8th Cir.

1977) (forty-five minutes); *United States v. Chrysler*, 533 F.2d 1055 (8th Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976) (twenty minutes).

### D. District Judge's Refusal to Recuse Himself

Hollister's final argument is that the court erred in denying defendant's 28 U.S.C. § 455(a) (1982) motion to disqualify the district judge. Section 455(a) requires that "[a]ny * * * judge * * * of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." [14] Hollister argues that the judge was unfairly biased in favor of the prosecutor, his ex-law clerk. Although Hollister does not urge that a former law clerk is forever barred from arguing before his or her ex-employer, he does argue that a certain time period should be required to pass before a judge allows himself or herself to hear a case in which a past clerk acts as counsel. Here, the prosecutor had finished her clerkship just three months before becoming involved in the prosecution of Hollister.[15]

▬ Hollister makes no claim that the district judge exhibited favoritism towards the prosecutor. Indeed, the record demonstrates that the judge conducted defendant's trial with fairness and impartiality. Given the facts of this case, we find that the district judge did not commit reversible error in refusing to disqualify himself.

▬ We do, however, endorse the principle that a certain insulation period should pass before a judge sits on a case in which his or her former law clerk acts as counsel. Avoiding the appearance of impropriety is as important to developing public confidence in the judiciary as avoid-

---

**13.** So named after *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**14.** Hollister did not file an affidavit that the district judge was biased or prejudiced against him or in favor of the government.

**15.** In *Smith v. Pepsico, Inc.*, 434 F.Supp. 524 (S.D.Fla.1977), the district judge denied a motion similar to Hollister's. Although the plaintiff's attorney was the judge's law clerk for two years, the clerkship had ended two years prior

to the lawsuit. The judge stated the standard for determining whether a judge should disqualify himself or herself as: "whether a reasonable person knowing all of the circumstances would be led to the conclusion that the judge's 'impartiality might reasonably be questioned.'" *Smith*, 434 F.Supp. at 525 (quoting 28 U.S.C. § 455(a) (1982)). The judge concluded that his past association with the former clerk was not enough to raise a reasonable question of bias.

ing impropriety itself. *See* 28 U.S.C. § 455(a) (1982); *Code of Judicial Conduct for United States Judges* Canon 2 (Rev. 1981); *see also Code of Judicial Conduct for United States Judges* Canon 3 C (Rev. 1979); *cf. Interim Advisory Comm. on Judicial Ethics*, Advisory Op. 11 (1970) (discussing the propriety of a judge acting in controversy where a friend of long standing or a friend's law firm is counsel). As observed in *Smith v. Pepsico, Inc.*, little information detailing judicial policies addressing the length of time that should pass before hearing a case in which a former clerk acts as counsel is available.[16] Rule 2.260 of the Federal Judicial Center's handbook for federal district and appellate court law clerks is instructive. It reads in relevant part:

> Many courts place restrictions upon a law clerk's professional activities after the end of the clerkship. A variety of limitations exist that include: * * * prohibitions upon the clerk from appearing as an attorney in the court in which the clerk served, usually for one or two years.

A. DiLeo & A. Rubin, *Law Clerk Handbook* 57 (1977). Recognizing that the considerations applied to determine an "appearance of partiality", *Smith*, 434 F.Supp. at 526, would vary from circuit to circuit, the judge in *Smith* proposed that a judicial policy should be formulated according to the "community standard." *Id.* We suggest that any district or circuit judge in the Eighth Circuit seriously consider recusal when an attorney who has recently served as a law clerk appears as counsel before him or her.[17]

**Conclusion**

The district court did not err in excluding certain evidence offered by defendant Hollister in connection with his defense of duress. The district judge did not err in refusing to disqualify himself, although a one year recusal period is recommended. The court's instruction on the presumption of innocence did not deny defendant his constitutional rights. Future presumption instructions, however, should follow the Devitt & Blackmar pattern. Finally, the court's supplemental communication to the jury was not coercive, and did not deprive Hollister of his right to a fair trial.[18]

The judgment of conviction is affirmed.

---

16. In *Smith,* the district judge analogized to an informal Southern District of Florida policy of recusal from suits involving the judge's former law firm for a period of one year. *Smith,* 434 F.Supp. at 526. The Eastern District of Pennsylvania has a similar policy, although the recusal period is two years. *See Bumpus v. Uniroyal Tire Co. Division of Uniroyal, Inc.,* 385 F.Supp. 711, 714 (E.D.Pa.1974).

17. *See* Sup.Ct.R. 7 ("No one serving as a law clerk * * * to a Justice of this Court * * * shall [after separating from that position] participate * * * in any case before this Court until two years have elapsed * * * *"); 1st Cir.R. 4 ("No

one serving as a * * * law clerk to a member of this court * * * shall * * * after separating from that position * * * appear at the counsel table or on brief in connection with any case heard during a period of one year following separation from service with the court.").

18. Hollister also argues that the district court denied him his eighth amendment rights and prejudiced his trial in setting an excessive pretrial bail bond. Hollister's claim became moot following his conviction. *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).