**UNITED STATES of America, Appellee,**

v.

**Kenneth ARPAN, Appellant.**

**No. 87–5466.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1989.

Decided Oct. 13, 1989.

Rehearing En Banc Denied Nov. 20, 1989.

Al Arendt, Pierre, S.D., for appellant.

Robert A. Mandel, Rapid City, S.D., for appellee.

Before LAY, Chief Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

The sole question in this case is whether responses given by the trial judge to questions propounded by the jury during its deliberations were inaccurate, misleading or coercive. Answering the inquiry in the negative, we affirm.[1]

## BACKGROUND

Kenneth Arpan was convicted of four counts of embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. § 1163 (1982). He had been charged with nine counts; he was acquitted on four and one was dismissed by the government.

## DISCUSSION

The case was submitted to the jury after the jury was given a comprehensive set of instructions on the applicable law. One instruction, number 20, reads as follows:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty as jurors to consult with one another, and to deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

This instruction is a correct statement of the law, especially when given prior to the

---

1. The dissent, in its footnote 2, criticizes the decision by a majority of the judges of the circuit to reconsider, en banc, the panel opinion. However, if the trial judge had responded as suggested by the panel and the dissent, the response would have violated the holding in *United States v. Skillman*, 442 F.2d 542 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). The panel opinion, in essence, established a new policy overruling *Skillman* in favor of a rationale expressed by Judge Brown, the panel author, in his dissent in *Huffman v. United States*, 297 F.2d 754, 758–59 (5th Cir.) (Brown, J., dissenting), *cert. denied*, 370 U.S. 955, 82 S.Ct. 1605, 8 L.Ed.2d 820 (1962), a case in which his proposed policy was rejected. Under the rules of this circuit, a panel has no authority to change the established precedent of the circuit. The panel overstepped its bounds in doing so in this case. *Brown v. First Nat'l Bank*, 844 F.2d 580, 582 (8th Cir.), *cert. dismissed*, — U.S. —, 109 S.Ct. 20, 101 L.Ed.2d 971 (1988). Thus, it was the responsibility of the majority to rehear this matter en banc in order to settle any confusion occasioned by the holding of the panel majority.

commencement of deliberations. *Potter v. United States*, 691 F.2d 1275, 1276 n. 1 (8th Cir.1982); *United States v. Skillman*, 442 F.2d 542, 559 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). It is also an acceptable variation of Instruction 7.01, part *Second*, Manual of Model Criminal Jury Instructions for the Eighth Circuit (Rev. ed. 1986), a publication prepared by a committee of district judges of this circuit.

During the course of deliberations, the jury propounded a series of questions to the trial judge, three of which are relevant to this appeal.[2] The questions asked and the answers given are as follows:

QUESTION 2:

If we do not have a unanimous decision on a count—(a split decision—) how do we record this on the count(s)?

ANSWER TO QUESTION 2:

*Members of the Jury*

I received your note (copy enclosed).

I answer as follows:

As to any count in the indictment, you may not return a *verdict* unless your *verdict* as to that count is unanimous. (Emphasis added.)

Respectfully yours

Donald J. Porter

Judge

QUESTION 4:

Judge:

We have deliberated through each count and have only decided on 1 unanimously. What are our next options? If we leave the "find the defendant . . ." space blank what happens?

ANSWER TO QUESTION 4:

Members of the Jury.

I have received your note (copy attached). In response, I send the following:

Well, as I see, you've been debating, discussing the case yesterday a total of about three hours, and today a total of about five hours. This makes a relatively short time. That's maybe about the

average time for jurors to deliberate, maybe a little more.

So, I'm going to ask you if you won't continue your deliberations and quietly discuss and visit with each other about the case. I guess it's pretty important to listen to each other, different views that others have. I think that's the advantage of the jury system—is hearing your conferees out in what they have to say and discussing it with them.

The issues really aren't difficult, the law isn't difficult, but this business of making decisions is hard. That's the toughest part of not only serving as a juror, but serving as a judge too. You have to say Yes or you have to say No. There isn't much room for in between. I think that's true in life. It's hard to make decisions. We're all inclined to let someone else make it or put it off or contemporize about it.

In your deliberations you should, to your best ability, consider all the evidence and the instructions of the court.

I admonish you and urge you to be attentive to each other and to do your best to see if you can't reach a unanimous verdict as to each count.

You may be as leisurely in your deliberations as the occasion may require; and you shall take all the time which you feel is necessary.

Respectfully submitted,

DONALD J. PORTER, CHIEF JUDGE

QUESTION 5:

08–19–87

Judge

We are *not* in agreement on 2 counts. Will the lack of a verdict on 2 counts affect our decisions on the rest of the counts? If so, how?

ANSWER TO QUESTION 5:

8–20–87

*Members of the Jury*

I received your note (copy attached) just before adjournment last night.

---

**2.** Juries, in difficult cases, through questions propounded to the trial judge, often seek help in arriving at a verdict. A skilled judge, such as we had in this case, endeavors to appropriately

respond without injecting himself into the deliberative process, which process is assigned solely to the jury in our system of justice.

I answer as follows:

If you have reached a unanimous verdict as to some counts of the indictment but not as to others you may return a verdict as to each count upon which you are unanimous. You may do so at once if you wish. Please notify me by note as to whether you wish to return at this time the verdicts upon which you are unanimous.

Upon return of the verdicts on which you are unanimous you may then retire to the jury room to deliberate upon the counts on which you have not yet reached a unanimous verdict.

Respectfully submitted

Donald J. Porter

Judge

■ The answers constituted part of the instructions on the law given to the jury even though they came during deliberations. Instructions are to be considered together, and the jury is routinely instructed that it "must not single out some instructions and ignore others, because *all* are important." Instruction 3.01, Manual of Model Criminal Jury Instructions for the Eighth Circuit (Rev. ed. 1986) (emphasis in original).[3]

Arpan contends that he was entitled to an explicit jury instruction to the effect that the jury had a right to reach a verdict of not guilty, guilty, or, to reach no decision, that is, to be a "hung jury." He further contends that the answer to Question Two was inaccurate or, at least, mis-leading because it failed to point out the "hung jury" possibility, especially in view of the nature of the questions propounded by the jury. He says that this omission was further compounded by the coercive effect of Answer Four.

■ In this circuit, Arpan has no right to an initial instruction specifically setting out the third alternative, that is, making no decision. In *Skillman*, 442 F.2d at 558, we said:

Defendant next contends that the district court, in effect, coerced a verdict by advising the jury in its main charge that unanimity was required, and explaining the effect of a guilty verdict and a not guilty verdict, leaving untouched the third alternative of a hung jury. Defendant urges this court to adopt the rationale of *United States v. Fioravanti*, 412 F.2d 407, 420 (3rd Cir.1969), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969), where the Court of Appeals for the Third Circuit announced the *Allen* charge would no longer be accepted. We decline to do so.

(Footnotes omitted.) We see no reason to take a different position simply because an instruction is given (or repeated)[4] in answer to a question by the jury.

Answer Two, given in conjunction with instruction 20 and other parts of the charge, was accurate, on point and not unduly coercive. At commencement of deliberations, the district court had provided

---

**3.** The dissent laments the failure of this opinion to discuss the standard of review to be applied to the actions of the trial judge. However, the proper standard is stated, at least implicitly, in our discussion when we point out that the instructions given (originally and in response to jury questions) were clear and correct statements of the law applicable to this particular case. The cases cited by the dissent, *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985) are clearly inapposite. These cases deal with instructions *given* that tended to shift the burden of proof on an essential element of the crime charged to the defendant, raising a constitutional issue en route. Here, the contentions arise from an instruction *not given*, that is, that the jury was not specifi-cally told that it had the right to reach no decision. As elsewhere stated, the jury, through instruction 20, had, in an appropriate manner, already been given such an instruction. And, as also indicated elsewhere, this circuit has said that the defendant has no constitutional right to an instruction that is more explicit than that given by the trial judge. Thus, at most, the inquiry amounts to whether the trial judge properly stated the law and whether he abused his discretion by not repeating part of the earlier instructions. Of course, *Neiss* and *Skarda, infra* at 877, stand for the proposition that the trial judge had no duty to repeat earlier instructions.

**4.** Instruction 20 had already informed the members of the jury that they had the right (and duty) to refuse to agree upon a verdict if "honest conviction[s]" led them to refrain from doing so.

the jury with a verdict form. The form listed each count and provided instructions to write in "guilty" or "not guilty" depending upon the verdict reached. Question Two, referring to recording a non-unanimous decision, was obviously directed toward the verdict form.[5] Indeed, only two *verdicts* could be reached, not guilty or guilty, and each had to be arrived at unanimously. Without a "unanimous decision" there was no *verdict* at all and there was nothing which could be recorded on the form. And, given the ruling in *Skillman,* it would have been improper to embellish the answer with a further instruction to the jury on the "no decision" alternative, at least under the language contained in the specific inquiry by the jury.

This court, in *United States v. Neiss,* 684 F.2d 570 (8th Cir.1982), discussing supplemental instructions generally, said: "it is well settled that a trial court is not required to speculate upon the purpose of the jury's inquiry during its deliberations[;] the court, if it chooses to reply, should answer the inquiry within the specific limits of the questions presented." *Id.* at 572. In *United States v. Skarda,* 845 F.2d 1508 (8th Cir.1988), this court also rejected an argument that the trial judge should have repeated part of the initial charge along with supplemental instructions occasioned by a jury question. In rejecting the defendant's challenge, we noted that the trial judge "provided specific, neutral instructions that replied clearly and precisely to the jury's questions." *Id.* at 1512. That is exactly what occurred in this case.

■ Arpan's coercion argument bottoms upon Answer Four. Question Two and Question Four, together, presented an obvious message to the trial judge that the jury

was having trouble completing its assignment. Given the inquiries made and the time taken for deliberations to that point, the response by the district court was logical and appropriate. *United States v. Smith,* 635 F.2d 716, 721 (8th Cir.1980) (setting forth factors to be considered before a supplemental charge is given). The Answer repeats, almost verbatim, an instruction approved by this court in *United States v. Cook,* 663 F.2d 808, 809–10 (8th Cir.1981). It constitutes a modified version of the "Allen" charge approved by the Supreme Court in 1896. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Therefore, even if somewhat coercive (and many procedural instructions are acceptably coercive to some extent), Answer Four was not erroneous.[6]

## CONCLUSION

Since the answers given were accurate and supported by the law of this circuit, there is no basis for Arpan's attack upon the actions of the trial judge. Therefore, finding no error in the instructions given the jury, we affirm.

LAY, Chief Judge, with whom McMILLIAN and ARNOLD, Circuit Judges, join, dissenting.

I respectfully dissent. This is indeed an unfortunate case. The defendant has been convicted on four counts of embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. § 1163 (1982). He was acquitted on four other counts. He was sentenced to a five year concurrent term. The government basically alleged that Arpan had overcharged the tribal organization on excavation and landscaping

---

5. Question Four, in a slightly different way, also referred to the verdict form and how it could or should be used.

6. It is also interesting that the dissent relies upon the contents of a juror letter without expressing any knowledge on its part as to what or who actually prompted the after trial communication with the trial judge. In adopting the letter as evidence of the collective state of mind of the jury in this case, the dissent, in its footnote 3, blithely dismisses the applicability of Fed.R.Evid. 606(b) which states that "a juror

may not testify ... to the effect of anything upon that [juror's] or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith...." That a juror may not impeach her own verdict dates from Lord Mansfield's time and the rule became securely imbedded in federal adjudication in 1915 through *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

work, submitted false bills for equipment used, and wrongfully converted money of the tribal organization to his own use. Arpan testified and denied all allegations against him. The record contains conflicting testimony and is far from overwhelming in sustaining the defendant's guilt. It is clear from the record that a jury could have as easily acquitted the defendant as it could have convicted. The jury had great difficulty in their deliberations. The case was submitted to the jury at 4:45 in the afternoon on August 18, 1987. The jury deliberated for three days and during that time submitted a number of notes to the court for consideration and explanation. The first note came at 5:45 p.m. on the first afternoon. The jury had not reached a verdict by 9:30 p.m. that evening and the court excused them until the next morning at 9:00 a.m. At 10:05 the next morning the court received a second note. After the court's response was given, a third note was received at 10:30 a.m. A fourth note was received at 3:15 p.m. After the court's response a fifth note was received at approximately 8:10 p.m. It was not until the next afternoon the jury returned its verdict of guilty on four counts.

It is obvious from the tenor of the notes that the jury could not reach a verdict on some of the counts. The problem is posed primarily by the jury's question and the court's response to the second note. The jury asked: "If we do not have a unanimous decision on a count—(a split decision) —how do we record this on the count(s)?" The court's response was "as to any count in the indictment, you may not return a verdict unless your verdict as to that count is unanimous."[1] This response was made more emphatic when the court later responded to note 5. The jury queried: "Judge: We are not in agreement on 2 counts. Will the lack of a verdict on 2 counts affect our decisions on the rest of the counts? If so how?" The court responded:

* * * you may return a verdict as to each count *upon which you are unanimous.*

* * * Please notify me by note as to whether you wish to return at this time the verdicts *upon which you are unanimous.*

Upon return of the verdicts on *which you are unanimous* you may then retire * * * to deliberate upon the counts on *which you have not yet reached a unanimous verdict.*

(Emphasis added).

This appeal was originally submitted to a panel consisting of myself, Judge Beam and a distinguished visiting judge and a former Chief Judge, now senior circuit Judge John Brown, who has served as a federal judge since 1955. Judge Brown wrote an opinion in which I joined and Judge Beam dissented.

Judge Brown, aware that this appeal did not involve a challenge to the *Allen* charge, but to the possible interpretation by the jury of the court's responses, wrote:

But in the words of the jury's inquiry, these are not the only "options". Because there is in fact—as all judges and attorneys, prosecution, defense, or both, know too well—the perfectly constitutional option of a failure of the jury to agree. The potential prospect of a hung jury is necessarily a constitutional alternative to our system of requiring proof beyond a reasonable doubt.

* * * Obviously, a trial court cannot instruct the jury that they must return a verdict, guilty or not guilty. And yet, that is the practical consequence of what the trial judge did here. The instruction, as given here in response to the jury's specific question, denied this jury the option of a hung verdict. This constitutes reversible error.

*United States v. Arpan,* 861 F.2d 1073, 1077 (8th Cir.1988) (footnotes omitted).

Judge Beam's dissent was succinct and to the point: there was no prejudicial error because the jury was presumed to follow

---

1. In its fourth note, the jury, stating it had only unanimously decided one count, requested the court inform them of their "options" at that point. The court responded with an *Allen* charge, similar to that approved in *United States v. Cook,* 663 F.2d 808 (8th Cir.1981), encouraging the jury to continue their deliberations.

all of the instructions given as a whole. The other instructions were, of course, given at the time the case was originally submitted to them. *Id.* at 1078 (Beam, J., dissenting).

Thereafter a suggestion for rehearing en banc was received and the majority of the court voted to place the case en banc.[2] The majority of the court now reinstates the conviction, finding the court's responses to the jury's inquiries, along with the earlier jury instructions, do not demonstrate error.

In doing so, the majority fails to apply or even discuss the proper standard of review in such a case. Our focus on whether there was error should not be based upon a judge's evaluation of right or wrong; rather the focus is to determine how a reasonable juror would have interpreted the court's instruction. *See Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). Thus, our review should consider whether a reasonable possibility exists that a reasonable juror *could* have understood that the option of a "hung jury" was not available. If the jury could have reasonably understood the court's responses to require unanimity in the result, guilty or not guilty, then there existed patent error.

To urge as the majority now does that the jury was accurately and appropriately instructed ignores the plain meaning of the district court's responses. The majority's result ignores as judges what man's intuitive nature tells us otherwise.

This fact is corroborated by the receipt of a letter by the district judge from a juror in the case.[3] The letter was received on August 21, 1987, the day after the verdict. It reads:

In regards to the trial of Kenneth Arpan, there are some matters you should be aware of.

As a juror, I took my job serious. During our deliberation, the evidence was thoroughly looked through, the testimony considered and much discussion took place. At the time of our final verdict on each count, *we were informed by you that the only choices we had were to unanimously find Mr. Arpan either guilty or not guilty.* But, we were not informed that if no decision could be reached unanimously, the count would be considered undecided. I found the defendant not guilty on all counts. After your note was returned to the jury room stating our two choices, the bargaining began between the jurors. I held out my decision until the end. I compromised the smaller amounts of money for a not guilty verdict on the larger amounts.

(Emphasis added.)

The majority's response that instruction #20, given prior to any deliberation by the jury, when read as a whole corrected any misunderstanding, is puzzling to me. This instruction was read two days before the misleading responses. In making its responses the court did not refer the jury back to this charge. The issue is not whether the technical language of the

---

**2.** Placing the case en banc, requiring the energies of the full court, is perhaps the most remarkable event surrounding this case. Federal Rule of Appellate Procedure 35(a) limits the court to hear only exceptional cases. A rehearing en banc should be necessitated not by reason of a result in a given case, not because of the correctness of the decision but by reason of the exceptional importance of the case requiring the attention of the full court. *See Western Pac. R.R. Corp. v. Western Pac. R.R.,* 345 U.S. 247, 260–62, 73 S.Ct. 656, 662–64, 97 L.Ed. 986 (1953). This case hardly fits that category. It involves specific facts which in all probability will never be repeated and the case can hardly serve as a valuable precedent in this circuit or anywhere else. An en banc guarantee to reinstate guilty verdicts in criminal cases is insignif-

icant to the precedential value of procedural fairness required in all criminal cases. These events recall Frankfurter's earlier aphorism that "[t]he history of liberty has largely been the history of observance of procedural safeguards. And the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law." *McNabb v. United States,* 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943).

**3.** Of course, such a letter cannot serve as a basis for a new trial. *See* Fed.R.Evid. 606(b). The original panel opinion by Judge Brown so held. Nonetheless the letter does serve to corroborate the fact that a reasonable juror could have misunderstood the district court's response.

court's response is legally correct. What the majority fails to evaluate is the fact that the response must be reviewed in light of the question asked. The issue is whether there exists a reasonable possibility that when considering the text of the question asked a reasonable juror could have misunderstood the court's responses. It is clear that such a reasonable possibility exists and that Judge Brown's opinion should be reinstated.[4]

**4.** In a somewhat similar case in the Tenth Circuit the court reversed a guilty verdict. In an excellent opinion written by Chief Judge Seth, another distinguished former chief judge of many years, the court stated:

> The trial judge received a question from the foreman of the jury during its deliberations. The question was:
> "Do all decisions have to be unanimous?" The judge did not advise the parties or the attorneys of the question and responded:
> "Members of the Jury: All verdicts you return have to be unanimous one way or the other. If you cannot agree as to any then you do not return a verdict as to it."
> The question was whether "decisions" have to be unanimous and the answer was that "verdicts" have to be unanimous. This would not ordinarily be significant but verdict forms had been provided to the jury. There was a sheet for each defendant and the sheet was headed "Verdict". Below the heading "Verdict" there were spaces opposite each count for the finding of the jury. With the response of the judge to "decisions," it is apparent that the jury could well have believed that its question as to decisions with the answer of the court meant that the "decisions" as to each

count had to be the same to make the "verdict" unanimous.

> The court's answer to the unanimous decision question was confusing and created a definite possibility for prejudice. The answer was in substance a reinstruction on the point and departed from the instructions originally given.

> The Government did not show the communication as to "decisions" to be harmless error. The trial court's response to the jury is by no means in "strict and exact conformity," see *United States v. Arriagada,* 451 F.2d 487 (4th Cir.), with the charges previously given in the defendants' presence. Rather, it is susceptible to various interpretations. "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350. The trial court's instruction, delivered *ex parte,* deprived the defendants of any opportunity of clarifying the ambiguity created by the supplemental instruction. That deprivation constitutes reversible error. *United States v. Schor,* 418 F.2d 26 (2d Cir.). *United States v. DeHernandez,* 745 F.2d 1305, 1307–08 (10th Cir.1984).