**UNITED STATES of America, Appellee,**

v.

**Gerald COOK, Appellant.**

**No. 81–1543.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1981.

Decided Nov. 12, 1981.

Glenn P. Binder, Philip G. Villaume, Saint Paul, Minn., for appellant.

John M. Lee, Janice M. Symchych, Asst. U. S. Attys., Dist. of Minn., Minneapolis, Minn., Gerald Weinrich, Legal Intern, for appellee.

Before GIBSON, Senior Circuit Judge, and ROSS and STEPHENSON, Circuit Judges.

PER CURIAM.

The sole issue in this appeal is whether a modified *Allen*[1] jury instruction, which was given by the district court[2] after the jury had deliberated for approximately five and one-half hours over a two-day period, had a sufficiently coercive effect on the jury which convicted appellant Cook so as to constitute plain error. We hold that the instruction was not unduly coercive under the circumstances and did not amount to plain error. We accordingly affirm Cook's conviction.

1. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. The Honorable Edward J. Devitt, now United States Senior District Judge for the District of Minnesota.

On March 10, 1981, appellant Gerald Cook, an Indian who resided on the Red Lake Indian Reservation in northern Minnesota, was charged in a three-count indictment with assaulting—as a principal or as an aider and abettor—two federal officers (two Bureau of Indian Affairs police officers) with a shotgun while those officers were performing official duties and wilfully damaging government property at a cost of over $100 by firing a shotgun at a Bureau of Indian Affairs police motor vehicle. The indictment's first two counts, which encompassed the assaults on the Bureau of Indian Affairs police officers, charged violations of 18 U.S.C. §§ 111, 1114, 1152 and 2 while count three charged that the infliction of damage to government property violated 18 U.S.C. §§ 1361, 1152 and 2.

A jury trial commenced on April 20, 1981, and the jury rendered guilty verdicts on all three counts on April 23, 1981. Following the jury's guilty verdicts, the district court polled each juror individually and each endorsed the verdicts reached. On May 13, 1981, the district court sentenced Cook to imprisonment of five years on each of the three counts, all of which to run concurrently.

The jury began deliberations at 11:10 A.M. on April 22, 1981. At 2:10 P.M., the jury requested clarification on the concept of aiding and abetting. In response, the district court reconvened the jury and had the court reporter reread the instruction on aiding and abetting which had been initially read to the jury. At 3:45 P.M., the jury asked whether they were required to decide if Cook actually fired the shotgun during the assault or whether Cook "just took part by aiding and abetting in the assault." The jury also sought further explanation of the three counts Cook was charged with. After consultation with counsel, the district court convened the jury once again and stated

that Cook was charged with "being the one who committed the assault," but also stated that "a person may also be found guilty of committing the assault by either doing it himself or by willfully aiding and abetting another in the commission of the assault." These two supplemental instructions are not challenged on appeal.

■ On the second day of jury deliberations, April 23, 1981, at 10:53 A.M., the jury sent the district court the following message: "We cannot come to a unanimous decision." The message also included the numerical figure "10–2"[3] and was signed by the jury's foreperson.

The district court, during a conference in chambers with counsel after the jury message was received, stated that his "inclination would be to call the Jury in and tell them it's too early yet for me [the district judge] to discharge them, and to continue on with their efforts, listen to each other with patience, quietude." Defense counsel stated: "I have no objections to that." The district court then reconvened the jury in the presence of counsel and, after reading the jury's last message to the court, stated:

Well, as I see, you've been debating, discussing the case today about an hour and a half, and yesterday you maybe spent four hours at it, which is about five and a half hours, which is a relatively short time. That's maybe about the average time for jurors to deliberate, maybe a little less. So, I'm going to ask you if you won't go back in and quietly?

\* \* \* \* \* \*

Quietly discuss and visit with each other about the case. I guess it's pretty important to listen to each other, different views that others have. I think that's the advantage of the jury system—is hearing your conferees out in what they

---

**3.** It was unfortunate that the jury split of 10–2 was revealed to the district court. However, that 10–2 split was never designated as for or against conviction. Although it is improper for a trial court to ask a deadlocked jury what its numerical division is, a proper supplemental instruction may nevertheless be given if the jury's numerical division is given, without so-

licitation, by the jury foreman. *See Bowen v. United States*, 153 F.2d 747, 751–52 (8th Cir.), *cert. denied*, 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611 (1946). Because we conclude that the supplemental instruction was proper in this case, the unsolicited revelation concerning the jury's division does not constitute reversible error.

have to say and discussing it with them. The issues really aren't difficult, the law isn't difficult, but this business of making decisions is hard. That's the toughest part of not only serving as a Juror, but serving as a Judge, too. You have to say Yes or you have to say No. There isn't much room for in-between. There isn't any room for in-between. I think that's true in life. It's hard to make decisions. We're all inclined to want to let someone else make it, or put it off or contemporize about it.

So, I hope after you visit awhile.

\*    \*    \*    \*    \*    \*

I admonish you and I urge you to be attentive to each other and to do your best to see if you can't reach a unanimous verdict.

Thank you. You may be excused.

The jury resumed deliberations at 11:10 A.M. and at 2:00 P.M. on that same day, Thursday, April 23, 1981, the jury found Cook guilty of all three counts charged. The court requested the clerk to poll the jury which was done. Each juror affirmed the verdict. Defense counsel never objected to the supplemental jury instruction and now claims that the giving of the instruction constituted plain error.

Fed.R.Crim.P. 30 states in part that no party "may assign as error any portion of the charge [jury instruction(s)] or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." *See also Hankerson v. North Carolina*, 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2346 n.8, 53 L.Ed.2d 306 (1977) (" * * * the normal and valid rule [is] that failure to object to a jury instruction is a waiver of any claim of error."); *United States v. Luschen*, 614 F.2d 1164, 1169 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980) (contention that the district court erred in giving a jury instruction was not preserved for review because defendant Luschen failed to object).

■ Cook attempts to avoid the application of this rule by claiming the supplemental instruction constituted plain error. *See, e. g., United States v. Holy Bear*, 624 F.2d 853, 855 (8th Cir. 1980) (a failure to object to jury instructions usually bars appellate review pursuant to Fed.R.Crim.P. 30, unless the alleged defect amounts to plain error under Fed.R.Crim.P. 52(b)); *United States v. Baykowski*, 615 F.2d 767, 772 (8th Cir. 1980) (when an appellant raises an objection to jury instructions for the first time on appeal, such objection comes too late to preserve the alleged error on appeal unless the error affected the substantial rights of the parties and thus constitutes plain error); *United States v. Robinson*, 419 F.2d 1109, 1111–12 (8th Cir. 1969) (plain error rule should be applied with caution, and only to avoid a miscarriage of justice; *Allen* charge there held not plain error). In our view, the challenged supplemental instruction did not constitute plain error because the entire trial transcript indicates that the supplemental *Allen*-type instruction was not unduly coercive under the circumstances.

Cook's essential argument is that the district court's supplemental instruction "failed to remind the jurors not to surrender a conscientiously held belief. The [supplemental] charge was therefore unbalanced and coercive under the circumstances." Although it is true that the supplemental charge did not remind the jurors not to surrender a conscientiously held belief, the charge was clearly not unbalanced and coercive under all the circumstances.

The primary problem with *Allen*-type supplemental jury instructions is the potential coercive effect upon the jurors, and especially upon those jurors who hold a minority position at the time the instruction is given. *See, e. g., United States v. Smith*, 635 F.2d 716, 721–22 (8th Cir. 1980). *Smith* examined four factors used by the Ninth Circuit to determine whether an *Allen* charge had a coercive effect upon the jury: (1) the content of the challenged instruction; (2) the length of the jury delibera-

tions following the *Allen* charge;[4] (3) the total time of jury deliberation; and (4) any indicia in the record of coercion or pressure on the jury. *Id.* at 721.

In this case, the language comprising the supplemental jury instruction was innocuous. The jury resumed deliberations after the district court's issuance of the supplemental charge at 11:10 A.M. Assuming that a reasonable lunch period was taken, the jury deliberated at least one hour after the supplemental instruction was given before rendering its verdict at 2:00 P.M. This indicates that the instruction did not have a coercive effect. *See, e. g., United States v. Smith, supra*, 635 F.2d at 721–22 (where this court, citing prior decisions, found that the mere fact that the jury deliberated forty-five minutes after an *Allen* charge was given did not warrant a finding that the instruction was unduly coercive). The total time of jury deliberations in this case was between six and seven hours over a two-day period and deliberations began after a two-day trial. In *Smith, supra*, this court concluded that *four hours of jury deliberation* after a two-day trial, considering the case's complexity, was not so disproportionate as to raise an inference that the *Allen* charge coerced the jury. *Id.* at 722. Finally, the record read as a whole does not contain any other indicia of coercion.

Although we prefer that an *Allen*-type instruction be given as part of the regular jury instructions before a deadlock has occurred, we have consistently declined to prohibit the use of such instructions. *See, e. g., United States v. Dawkins*, 562 F.2d 567, 570 n.3 (8th Cir. 1977). In *United States v. Wiebold*, 507 F.2d 932, 934–35 (8th Cir. 1974), we indicated a preference for giving the charge as a part of the regular instructions before a deadlock has occurred.

After careful examination of the entire record, we conclude that the supplemental instruction did not have an unduly coercive effect on the jury. The district court's issuance of the supplemental charge does not

rise to the level of plain error. The conviction is affirmed.

Affirmed.

---

4. Indeed, a coercive effect is "strongly suggested" where the jury returns its verdict promptly following the supplemental *Allen*-type instruction. *Hodges v. United States*, 408 F.2d 543, 554 (8th Cir. 1969).