Gary Allen POTTER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 82–1608.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1982.

Decided Nov. 9, 1982.

Roy Gean, III, argued, Gean, Gean & Gean, Fort Smith, Ark., for appellant.

W. Asa Hutchinson U.S. Atty., Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., argued, for appellee.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The decisive issue in this appeal is whether the *Allen* charge coerced a minority of the jury. Gary Allen Potter was convicted of forcibly resisting, opposing, impeding, intimidating and interfering with a National Park Ranger engaged in the performance of his official duties, in violation of 18 U.S.C. § 111. The indictment followed an altercation near the Ranger Station in Buffalo National Park which resulted in a park ranger receiving bruises and scratches, and losing a substantial amount of blood, and Potter receiving bruises and scratches and being shot in the abdomen by the ranger. On this appeal Potter urges several grounds in addition to the impropriety of the *Allen* charge. Because we conclude that the *Allen* charge was worded so that it coerced the jury, we reverse.

The trial lasted approximately five and one-half hours. The original instructions informed the jury of the desirability of deliberating with a view to reaching an agreement and of reexamining their views and changing their opinions. The pertinent instruction was in the wording suggested and approved in III ABA Standards for Criminal Justice, Standard No. 15–4.4, and the Commentary following.[1]

The jury retired and commenced deliberation at 11:00 a.m. on the morning of the second day of trial. The jury was excused for lunch at 12:45 p.m. and resumed deliberations at 1:45 p.m. The court informed counsel that it understood the jury was "having trouble reaching a verdict." At 3:05 p.m. the jury was called back into the courtroom and the district judge stated to the foreperson, "Mrs. Brice, I understand the jury has not been able to reach a verdict at this point." Mrs. Brice replied, "That is right." Immediately thereafter the court, sua sponte, gave the supplemental charge. Potter objected to the charge. The jury then retired and deliberated until 5:45 p.m., when the guilty verdict was returned.

This court has consistently rejected the claim that the *Allen* charge is inherently coercive, prejudicial and unconstitutional. *Hodges v. United States,* 408 F.2d 543, 552 (8th Cir.1969); *United States v. Skillman,* 442 F.2d 542, 558 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). We have recognized that attacks on the *Allen* charge are becoming increasingly frequent. *United States v. Ringland,* 497 F.2d 1250, 1252 (8th Cir.1974); *United States v. Skillman,* 442 F.2d at 558; *Hodges v. Unit-*

---

1. The instruction is as follows:

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

This court has approved a similar instruction given along with the original instructions. *United States v. Skillman,* 442 F.2d 542, 558–60 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). The instruction does not have the coercive impact of the traditional *Allen* charge because it is to be given before the jury retires (and thus before deadlock) and because it makes no reference to the minority. 442 F.2d at 559.

ed States, 408 F.2d at 552.[2] We have cautioned that the *Allen* instruction is preferred as part of the regular jury instruction before deadlock has occurred. *United States v. Wiebold,* 507 F.2d 932, 934–35 (8th Cir.1974); *United States v. Cook,* 663 F.2d 808, 810 (8th Cir.1981); *United States v. Reed,* 686 F.2d 651 at 652 (8th Cir.1982). In *United States v. Smith,* 635 F.2d 716 (8th Cir.1980), we encouraged district courts to consider with particular care whether a supplemental *Allen* instruction is absolutely necessary under the circumstances. 635 F.2d at 722.

This court has carefully considered the language in *Allen* charges on numerous occasions. The purpose of the analysis of the language in these decisions has been to determine whether the language in the context of all the circumstances was coercive in nature. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). Many of the instructions have been innocuous and nothing more than gentle reminders to further consider the evidence and attempt to arrive at a verdict. *See, e.g., United States v. Cook,* 663 F.2d at 809–10; *United States v. Skillman,* 442 F.2d at 558–59 n. 13.

In *Hodges* and *Smith* we considered supplemental charges that were "essentially pure *Allen* charges," and affirmed convictions. These charges expressly direct jurors to reconsider their positions, and address the minority or dissenting jurors alternatively, when a majority is for conviction or when a majority is for acquittal. The instruction in this case is a variation on the pure *Allen* instruction, and makes several departures from the language in earlier instructions.

A reading of our numerous decisions dealing with *Allen*-type charges makes appropriate the following statement from *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir.1971):

> The caution required dictates also that trial courts should avoid substantive departures from the formulations of the charge that have already received judicial approval. Such departures impose on appellate courts the almost impossible task of weighing the prejudicial impact of a variation of the approved charge. And in all events, the court should be careful to include all those elements of the original charge designed to ameliorate its coercive effect, and to avoid language which might heighten it.

*Smith* outlined a number of considerations in determining whether there had been coercion.[3] The length of deliberations following the charge, approximately two and one-half hours, the total time of deliberation, approximately five and one-half hours, and the length of trial, five and one-half hours, must be considered. This was a simple case with credibility of the defendant and the ranger the chief issue. Here the jury was instructed in the original charge that it should deliberate with a view to reaching a verdict and that individual jurors should not hesitate to change an opinion if convinced it is erroneous. The supplemental charge was given after three hours of deliberation, when the district judge ascertained that the jury was having trouble and had not been able to reach a verdict.[4]

---

**2.** The *Allen* charge, approved in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), was severely criticized in Marcus. *The Allen Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused?,* 43 Mo.L.Rev. 613 (1978). Three circuits have expressly disapproved the *Allen* charge. *United States v. Thomas,* 449 F.2d 1177 (D.C. Cir.1971); *United States v. Fioravanti,* 412 F.2d 407 (3rd Cir.1969), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1970); *United States v. Brown,* 411 F.2d 930 (7th Cir.1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970).

**3.** (1) The content of the challenged instruction, (2) the length of the period of deliberation following the *Allen* charge, (3) the total time of deliberation, and (4) any indicia in the record of coercion or pressure upon the jury. 635 F.2d at 721.

**4.** In *Smith,* a supplemental charge given after three hours of deliberation with no indication of deadlock, was considered premature. 635 F.2d at 721.

■ The critical question before us is the content of the instruction, and whether the language used falls within the patterns approved or disapproved by this court.

As our earlier decisions have observed, the primary problem with the *Allen*-type charge is "the potential coercive effect upon the jurors ... who hold a minority position at the time the instruction is given." *United States v. Cook*, 663 F.2d at 810; *United States v. Smith*, 635 F.2d at 721. In *Smith*, we outlined the instruction there under consideration:

> In particular we note that the district court expressly recognized the possibility that a majority of the jurors may have favored acquittal, that the government has the burden of proof beyond a reasonable doubt, that the majority as well as the minority should reexamine their positions, that no juror was to yield a conscientiously held conviction, and that the jurors could continue to deliberate as long as they required.

635 F.2d at 721.

In the case before us two of the five significant points of the instruction in *Smith* are missing. There was no statement that the government has the burden of proof beyond a reasonable doubt, or if the jury had such doubt it should acquit, and there was no statement that the majority as well as the minority should reexamine their position. We will consider these two omissions in turn.

The Supreme Court did not set out the full body of the instruction given in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), but it stated that the instruction was "taken literally" from two earlier cases. 164 U.S. at 501, 17 S.Ct. at 157. The earlier Massachusetts case referred to, *Commonwealth v. Tuey*, 62 Mass. (8 Cush.) 1 (1851),[5] contained a reminder of the burden of proof. The content of the *Tuey* and *Allen* instructions was the subject of research and discussion by Chief Judge Aldrich of the First Circuit in *Pugliano v. United States*, 348 F.2d 902, 903–04 (1st Cir.1965), where he states in reference to *Allen*:

> [N]o one since that time appears to have noted that, as the record discloses, the district court [in *Allen*] had included from Tuey, at the corresponding place in its supplement charge, the following:
>
> > "In order to make a decision more practicable, the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the government."
>
> At an appropriate time it might well be asked whether this language may have been, and should be, regarded an integral part of the Allen charge, the leaven making it palatable.

The Supreme Court has considered the *Allen* charge in more recent times, in *Kawakita v. United States*, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952). It devoted only one line that could refer to the *Allen* charge when it ruled that other errors were "insubstantial and so adequately disposed of by the Court of Appeals" that they were not addressed. 343 U.S. at 744, 72 S.Ct. at 966. The decision of the court of appeals in *Kawakita*, 190 F.2d 506, 525 n. 17 (9th Cir.

---

5. *Tuey* has a firm position in our law following *Allen*. Massachusetts, however, has recently modified the language of the *Tuey* charge. *Commonwealth v. Rodriquez*, 364 Mass. 87, 300 N.E.2d 192 (1973). The amended *Tuey* charge continues to restate the burden of proof. The criticism in *Rodriquez* was because the original *Tuey* charge (1) informs the jury that the case must at some time be decided and (2) invites the minority to reconsider their position in light of the views of the majority, but does not invite the majority to reciprocate toward the minority (except as it asks each juror to listen to the others). The amended *Tuey* charge makes no reference to the minority or majority. The amended charge states, in part, "[W]here there is disagreement, jurors for acquittal should consider whether a doubt in their own minds is a reasonable one, which makes no impression on the minds of others.... And, on the other hand, jurors for conviction ought seriously to ask themselves, whether they may not reasonably doubt the correctness of a judgment, which is not concurred in by others...." 300 N.E.2d at 203 (emphasis deleted). The *Tuey* charge as amended by *Rodriquez* avoids many of the areas of criticism addressed to the *Allen* charge in the many cases in which it has been considered.

1951), reveals that the *Allen* instruction concluded with the following language:

> You will remember at all times if any doubt remains in your mind, any reasonable doubt as to the guilt, the defendant is entitled to your verdict of acquittal.

In *Smith* this court approved an instruction which included the following language:

> Remember, too, that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.

The instruction in *Smith* is essentially identical in its entirety to the instruction in 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 18.14.

The instruction in this case also omits a clear statement that the majority as well as the minority should reexamine their position. The supplemental instruction contained the following language:

> In the course of your deliberations, the jurors should not hesitate to reexamine his own views and change his opinion, if convinced it is erroneous. Each juror who finds himself to be in the minority, should reconsider his views, in the light of the opinion of the jurors to the majority. If much the greater number of you are for a particular conclusion, each dissenting juror ought to consider whether his or her position is a reasonable one....

The first sentence of the instruction set forth above is directed to all jurors, but immediately thereafter this generality is limited to minority or dissenting jurors. It thus does not expressly direct the majority as well as the minority to reexamine their positions. *See United States v. Flannery*, 451 F.2d at 883; *United States v. Smith*, 635 F.2d at 721.

We concluded that the instruction in *Smith* required the majority as well as the minority to reexamine their positions, undoubtedly from general language directed to all jurors to reexamine their views, and specific statements that if the greater number are for conviction, each dissenting juror should reconsider his view, and "if a majority or even a lesser number" are for acquittal, the other jurors ought seriously to reconsider their views.

This court more than fifty years ago, in *Stewart v. United States,* 300 F. 769 (8th Cir.1924), found a supplemental charge to be erroneous, which failed to inform the jurors that they should not surrender their conscientious convictions, and which contained this statement from the court's reasoning in *Allen:*

> It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself.

The court held that the instruction given

> so slightingly treated the positive duty of each juror to form and to make his verdict express his own honest conviction, based on the evidence in the case, and so forcibly urged deference to the views of the majority and unanimity, that we are unable to resist the conviction that it tended too strongly toward coercion of the minority of the jury to surrender their honest convictions in order to acquiesce in the convictions of the majority.... [t]he charge itself was not sufficiently guarded; its tendency was to bring the minority to an agreement with the others, even against the dictates of their own judgment.

300 F. at 786.

Likewise, the instruction in question too forcibly urged deference to the views of the majority.

The instruction approved in *Hodges* considered the position of the minority when the majority was for plaintiff, and alternatively when the majority was for the defendant. It also specifically invited the majority to seriously question the weight and sufficiency of the evidence upon which their doubt was based. 408 F.2d at 553.

Appellant Potter argues that the failure to alternatively address the position of the minority when the majority was for conviction or when the majority was for acquittal enhances the coercion on the minority or dissenting jurors. The pure *Allen* charge is

so worded in the alternative. Whether this departure from the pure *Allen* form is fatal, standing alone, we need not decide in view of the other departures from the *Allen* instructions in this case. It but underscores the concern expressed in *Flannery* that the departures impose "an almost impossible task of weighing the prejudicial impact" of variations in the approved charge. 451 F.2d at 883.

There is yet another variance between the instruction in this and other approved *Allen* instructions.

The instruction in *Hodges* very clearly told the jury that the court did not attempt to influence the jury one way or the other. Judge (now Justice) Blackmun specifically referred to this language and the length of continued deliberation in deciding that there had been no coercion. 408 F.2d at 554. The court in *Smith* informed the jury that it was at liberty to disregard comments given in the supplemental instruction. We realize this language is not in the charge discussed in *Allen*. This language, however, diminishes the coercive effect of the "essentially pure *Allen* charge." It is lacking in this case.

It is apparent that the *Allen*-type charge in this case made substantive departures from earlier charges that have been carefully examined and approved by this court. The omission of any reference to the burden of proof or that defendant should be acquitted if there is reasonable doubt as to guilt, and the omission of a clear statement that the majority should reexamine their position are failures to "include all those elements of the original charge designed to ameliorate its coercive effect, and to avoid language which might heighten it." *United States v. Flannery*, 451 F.2d at 883. In addition, the instruction omits any caution as to the effect of the charge. We must conclude that these omissions enhanced the coercive effect of the *Allen* charge beyond that earlier approved by this court. The

leaven making the charge palatable was lacking. *Pugliano v. United States*, 348 F.2d at 904. Under the particular circumstances of this case, we conclude that the language of the instruction was so coercive that the judgment must be reversed.[6]

■ Appellant Potter claims that the district court erred in denying his motion for acquittal. A violation of 18 U.S.C. § 111 requires a finding, and the jury was so instructed, that (1) Potter forcibly resisted, opposed, impeded, intimidated and interfered with a federal law enforcement officer; (2) that this occurred while the officer was engaged in the performance of his official duties; and (3) that Potter did so willfully.

There was no question that the ranger, Besett, was involved in the performance of his official duties. The altercation followed an attempt by the park ranger to obtain identification and car registration documents from Potter and his companion and the request that the two accompany Besett to the Ranger Station. Besett testified that Potter initiated the physical confrontation without provocation. Potter testified that after he was struck in the head by Besett, "I did the only thing a gentleman could do, I struck back." None of the witnesses, other than Besett and Potter, were entirely clear as to who struck the first blow. Potter's companion stated that when she looked over "they were fighting." Potter said that the gun appeared when Besett realized he wasn't going to succeed with his hands. Potter argued self-defense, and the jury was instructed that the government had the burden of proving beyond a reasonable doubt that Potter did not act in self-defense.

■ Any conflicts of testimony are to be resolved in favor of the verdict. *United States v. Steffen*, 641 F.2d 591, 597 (8th Cir.1981). We must view the evidence in the light most favorable to the government and give the government the benefit of all

---

6. Another consideration is the failure to give express recognition to the possibility that the majority may be for acquittal. While the language here was general in nature and essential-

ly neutral, *i.e.*, "if much the greater number of you are for a particular conclusion," this presents additional concerns as to the adequacy of the charge.

reasonable inferences in reviewing the denial of the motion for acquittal. *United States v. Jackson,* 680 F.2d 561 at 563 (8th Cir.1982). The conviction will be reversed only if the reviewing court determines that a reasonable jury could not have found beyond a reasonable doubt that the elements of the crime existed. *Cf. United States v. Singer,* 660 F.2d 1295, 1301 (8th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

■ We conclude that the evidence established the elements of the offense set out above and that the district court did not err in denying the motion for acquittal.

■ We find Potter's Speedy Trial Act argument to be without merit. We need not reach other issues raised by Potter as they may not recur on retrial. It is appropriate, however, that we comment upon the judgment entered following the verdict. The judgment recited that Potter had been convicted of the charges "all in violation of 18 U.S.C. § 111 and 18 U.S.C. § 1114 as charged in the indictment." The indictment, after recitation of the acts alleged, further claimed that they were "in violation of 18 U.S.C. 111 and 18 U.S.C. 1114."

It is apparent that Potter was tried under 18 U.S.C. § 111, which defines the offense as occurring whenever a person "forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person designated in section 1114 of this Title." The reference to section 1114 is simply to enumerate and define the persons against whom such offenses are committed. The offense defined in section 1114 is the killing of such defined individuals. The officer in this case was not killed, and this section was relevant only because of its enumeration of protected federal officials. Because of the possibility that the judgment allows an inference that two offenses were committed, the enumeration of both statutes in the judgment was improper. The government admitted in argument that the reference to 18 U.S.C. § 1114 should be expunged, and we agree.

We reverse the judgment of the district court and remand for retrial.