UNITED STATES of America, Appellee,

v.

**Robert WEBB, Appellant.**

No. 86–1644.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1987.

Decided April 22, 1987.

James C. Delworth, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Richard L. Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Robert Webb appeals his conviction for possession of a firearm by a convicted fel-

on in violation of 18 U.S.C. App. § 1202(a)(1). Webb contends that the district court erred in giving a supplemental *Allen* instruction [1] after asking for the numerical division of the jury and preliminarily declaring a mistrial. For the reasons discussed below, we reverse Webb's conviction and remand for a new trial.

## I. BACKGROUND

The evidence produced at trial revealed conflicting accounts of the events immediately preceding Webb's arrest. According to the Government, Webb was detained by two detectives from the City of St. Louis Police Department when his van failed to stop at a stop sign. The detectives asked Webb to step down from the van and produce his driver's license. When Webb failed to produce a license, he was arrested and patted down. During the search, one of the detectives seized a handgun from Webb's jacket pocket. The detectives testified that Webb stated he was carrying the gun for protection. According to the defense, Webb had been standing outside his van on the passenger side talking to a passenger inside the van for approximately twenty minutes when two detectives approached him. Although the detectives subsequently patted Webb down, they found no weapon on Webb. Instead, one of the detectives entered the van and came back out with the handgun. Webb denied having any knowledge of the gun. Additional testimony indicated that Webb's van earlier in the evening did not contain a handgun.

The jury, after having been instructed on the offense, began deliberations at 1:40 p.m. on the second day of Webb's trial. At 3:05 p.m., the jury requested a rereading or, alternatively, a copy of the instructions. On the suggestion of both Mr. Delworth, the Public Defender, and Mr. Poehling, the Assistant United States Attorney, the court denied the jury's request and informed them to remember the instructions as read. At 5:15 p.m., the court received another communication from the jury stating that they were unable to reach a unanimous decision. The court, after reading the

---

1. So named after *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

jury's note to counsel, suggested that either of the following procedures would be proper: (1) give the jury a supplemental *Allen* instruction or (2) ask how the jury stood numerically and whether further deliberations would be productive.[2] After soliciting counsel's views, the court decided to inquire into the numerical division of the jury and, if the division was heavily one-sided, to give the jury an *Allen* instruction. At this point, Mr. Delworth stated he had no objection to the court's procedure.

Subsequently, the jury was recalled and the foreperson was asked how the jury stood numerically without indicating whether for guilt or acquittal. The foreperson replied "Eleven for. Eleven for and...." The court declared a mistrial and asked counsel to approach the bench.

During the bench conference, the court reconsidered and withdrew the mistrial ruling observing that the foreperson had not indicated whether the eleven jurors were for acquittal or guilt. The court then decided to give the jury a supplemental *Allen* instruction. Mr. Delworth, now uncomfortable with the court's proposed action, objected and moved for a mistrial. The court, however, informed the jury that it would be giving a supplemental instruction and recessed.

In chambers, the court held a conference regarding the *Allen* instruction it proposed to give to the jury. Mr. Delworth, however, objected to the proposed instruction and stated a preference for the *Allen* instruction from the Model Criminal Jury Instructions for the Eighth Circuit.[3] The court withdrew its proposed instruction, and drafted another. At 5:30 p.m. the trial judge gave the supplemental *Allen* instruction.[4] Fifteen minutes later, the jury returned a unanimous verdict of guilty.

2. The trial transcript is set forth below:

THE COURT: Now I—as I see, I have two choices. I can either issue another instruction and based on the Allen type case or I can call them in and question them individually as to what their position is, what—how they stand numerically and whether any further deliberation would be of use.

Do you have any preference?

MR. POEHLING: Did I understand that the Court is going to question them individually?

THE COURT: No, bring them in and just ask them if there's any possible—no, I would ask the foreman what they stand, but—

MR. POEHLING: That would be acceptable, Your Honor.

THE COURT: Which one?

MR. POEHLING: Bring them in and ask them where they stand numerically without giving any indication of which way and whether or not deliberation would be of further value to them.

THE COURT: Is that satisfactory with you?

MR. DELWORTH: Yes, Your Honor, that will be fine.

THE COURT: Rather than giving them an Allen type instruction?

MR. DELWORTH: If I may just have a moment?

MR. POEHLING: I would suggest the Court possibly if it is a heavy numerical number, 10–2, something along that line, then an instruction that the Court's envisioning might be proper.

THE COURT: All right.

MR. DELWORTH: Yes, Your Honor, after discussing with my client I think what we would request would be an Allen type instruc-

tion where they would be instructed to further deliberate. That would be our position.

THE COURT: All right. I think I'll call them in and ask them where they stand numerically.

Do you have any objection to that, Mr. Delworth?

If it's a hopeless deadlock, then there's no point in giving the Allen.

MR. DELWORTH: Okay. That would be fine, Your Honor.

THE COURT: All right.

(R. 188–89).

The court recalled the jury and questioned the foreperson:

THE COURT: I would like to know where you stand numerically. I don't want to know whether it's guilty or innocence, I just want to know the numbers.

MISS MONAT: Eleven for. Eleven for and—

THE COURT: That's it. We'll declare a mistrial. I think—I think it's best to declare a mistrial. Would you come up?

(R. 190).

3. Model Criminal Jury Instructions for the Eighth Circuit § 7.02 (Committee on Model Criminal Jury Instructions Eighth Circuit, Supp. 1986).

4. The instruction read to the jury, set out below, does not conform to the Model instruction. Specifically, the instruction omitted any reference to the burden of proof, failed to state that both sides should re-examine their positions, and neglected any cautionary language as to the effect of the instruction. Model Criminal Jury Instructions for the Eighth Circuit § 7.02 (Com-

## II. DISCUSSION

██ In determining whether an *Allen* charge has an impermissible coercive effect on the jury, we examine four factors: "(1) the content of the challenged instruction, (2) the length of the period of deliberations following the *Allen* charge, (3) the total time of deliberation, and (4) any indicia in the record of coercion or pressure upon the jury." *United States v. Smith*, 635 F.2d 716, 721 (8th Cir.1980) (citation omitted).

In this case, the most obvious indicia of coercion is the court's inquiry into the numerical division of the jury. It is well settled that a trial judge should not inquire into the numerical division of the jury when the jury has indicated its inability to agree. In *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the Supreme Court held that "the inquiry itself should be regarded as grounds for reversal." *Id.* at 450, 47 S.Ct. at 135. The Court stated:

> Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature of extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to

without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

*Id.*

Moreover, the court deemed the error a *per se* ground for reversal notwithstanding the absence of a particular exception by counsel because "the error * * * affects the proper relations of the court to the jury, and cannot be effectively remedied by the judge's charge after the harm has been done." *Id.*

The cases in this circuit have consistently followed *Brasfield* and have held that an inquiry into the numerical division of a jury constitutes a *per se* ground for reversal of a federal conviction. *Cornell v. State of Iowa*, 628 F.2d 1044, 1047 (8th Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); *Jacobs v. United States*, 279 F.2d 826, 832 (8th Cir.1960). Only in the rare circumstance that the inquiry reveals an even division of the jury is the coercive effect of the inquiry mitigated to an extent that reversal is not required. *Anderson v. United States*, 262 F.2d 764,

mittee on Model Criminal Instructions Eighth Circuit, Supp.1986); *Potter v. United States*, 691 F.2d 1275, 1278 (1982).

The instruction read as follows:

This is an important case for both sides. The trial has been expensive for both sides. Your failure to agree upon a verdict will necessitate another trial equally as expensive. The Court is of the opinion that the case cannot again be tried better or more exhaustively than it has been on either side. It is, therefore, very desirable that you should agree upon a verdict.

In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other.

You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so.

(Appendix to Brief for Appellant).

Furthermore, we have repeatedly stated a preference for including these instructions along with the general instructions to the jury. *Potter*, 691 F.2d at 1277 *quoting United States v. Flannery*, 451 F.2d 880, 883 (1st Cir.1971); *United States v. Reed*, 686 F.2d 651, 652 (8th Cir. 1982) (per curiam); *United States v. Cook*, 663 F.2d 808, 811 (8th Cir.1981) (per curiam); *see also*, Committee Comment to § 7.02 of the Model Criminal Jury Instructions for the Eighth Circuit, *supra*.

774 (8th Cir.), *cert. denied,* 360 U.S. 929, 79 S.Ct. 1446, 3 L.Ed.2d 1543 (1959).

The Government urges affirmance on the ground that the defendant consented to the procedure by specifically requesting an *"Allen* type instruction", fn. 2 *supra.* Moreover, the variance between an approved instruction and the instruction given does not raise the issue of an erroneous instruction because counsel did not specifically object to the court's instruction but merely expressed a preference for the Model instruction of the Eighth Circuit.

The Government's position in part is well taken. Appellant and his counsel did consent to the giving of an *Allen* instruction unless the jury were hopelessly divided. Yet, an additional element in the equation of coerciveness between court and jury arose when the presiding judge declared a mistrial upon hearing the numerical 11–1 decision of the jury.

The district judge initially directed a mistrial before consulting either attorney. Counsel for Webb immediately moved for a mistrial. Moreover, this counsel later stated his views about the court's *Allen* type instruction:

THE COURT: I'm going to offer this one [instruction] that was—that you both have seen.

Do you want to object to it?

MR. DELWORTH [appellant's counsel]: Yes, Your Honor, I would prefer the Eighth Circuit, the model criminal jury instructions to the Eighth Circuit. Their modeled Allen instruction.

(Tr. at 192).

We construe this statement as a specific objection to the instruction and requesting the Model instruction.

■ The coercive effect on the jury of the proceedings which we have outlined is supported by the very short time of fifteen minutes that the jury took to reach the verdict upon receiving the *Allen* instruction. Accordingly, notwithstanding appellant's initial consent to the inquiry of the jury division, counsel did not waive his objection to the coercive effect of further proceedings including the court's statement of mistrial, plus an *Allen* charge which omitted a statement advising the jury that the Government must prove guilt beyond a reasonable doubt and suggesting that both minority and majority should re-examine their position. *See Potter v. United States,* 691 F.2d 1275, 1280 (8th Cir.1982).

**III. CONCLUSION**

We conclude that the proceedings related in this opinion including the giving of an *Allen* charge, which we deem as incomplete, served improperly to coerce the jury. Appellant did not consent to the full course of the proceedings relating to the polling of the jury, the declaration of a mistrial, a withdrawal of that declaration and the giving of an incomplete *Allen* charge. Accordingly, we reverse and remand for a new trial. We believe this result is required by the decisions of this court. *See, e.g., United States v. Hollister,* 746 F.2d 420, 425 (8th Cir.1984); *United States v. Smith,* 635 F.2d at 721.

ROSS, Circuit Judge, dissenting.

In my opinion counsel for appellant effectively waived any objection to the actions taken by the trial court. This waiver is set forth clearly in footnote 2 of the court's opinion. I would affirm the conviction.