UNITED STATES of America, Appellee,

v.

James Harold ROBINSON, Appellant.

No. 90–2564WA.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1991.

Decided Jan. 9, 1992.

Rehearing Denied April 2, 1992.

---

William R. Wilson, Little Rock, Ark., argued (John Richard Byrd, Hamburg, Ark., and Gary D. Corum, Little Rock, Ark., on brief), for appellant.

Marie K. McElderry, Dept. of Justice, Washington, D.C., argued (J. Michael Fitzhugh, U.S. Atty., Fort Smith, Ark., and John R. Dunne, Asst. Atty. Gen., and Dennis J. Dimsey, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

James Harold Robinson appeals his conviction on three counts of willfully depriving and one count of conspiring to deprive Jimmy Lee Mosier of his civil rights under color of state law. Robinson claims that a supplemental jury instruction given by the District Court coerced the jury's deliberations. We agree and reverse.

## I.

On February 21, 1990, a grand jury sitting in the Western District of Arkansas indicted Robinson on one count of violating 18 U.S.C. § 241, and four counts of violating 18 U.S.C. § 242. The indictment alleged that Robinson, then the Sheriff of Ashley County, Arkansas, violated Timmy

Rodell Hendrix's civil rights by beating him on June 17, 1988. In three separate counts, the indictment charged Robinson with violating Jimmy Lee Mosier's civil rights by beating him three different times on the night of September 21, 1988. The indictment also alleged that Robinson joined with an unnamed co-conspirator to deprive Mosier of his civil rights to get him to confess to being a "peeping tom."

Robinson's trial began on June 26, 1990. On the morning of Friday, June 29, counsel delivered their closing arguments, and the Court instructed the jury. The jury began its deliberations around 1:00 p.m. that same day. Although there is no record of it, the Court and jury appear to have communicated before 6:00 p.m. Apparently the Court asked the jury about the status of its deliberations.

At 6:05 p.m., again without discussing it with counsel, the Court called the jury into open court. The Court indicated that it "gathered from the response" that the jury had not made progress for some time. Trial Transcript at 684. The foreperson indicated that the jury had reached a stalemate between two distinct points of view. After learning that the jury had been deadlocked since beginning its deliberations at 1:00 p.m., the Court stated, *sua sponte:*

> Well, that's quite disappointing. It doesn't seem to me that the justice we feel so proud of in this country is manifesting itself.
>
> If we reach the point in this country that reasonable people cannot reach an agreement on reasonable facts that have been presented to them, it seems to me it discourages the kind of system that we know we've got to have in this country. And that is that people want justice to be done.
>
> And it may be that you've been here today, a long day; and it may be that you are tired. And perhaps it might be advisable if I send you home and let you come back tomorrow. Let you get a good night's rest and have an opportunity, each of you in your own mind, to think the matter over, *particularly those in the minority.*

I don't know—I don't want you to tell me the numerical number one way or the other. *If there is a minority*, it would seem to me that in the interest of justice and justice being done that you *give*, in accordance with the evidence that's been presented here, *consideration to the majority's side of the question.*

But I remind you of the importance that each of you must decide the case for yourselves and all.

But, *nevertheless*, justice may prevail. It must prevail. So we simply cannot overlook matters of this kind and pass them by and not try to get them resolved.

Is there any one of you that has any comment or would like to give your opinion about taking a break and coming back tomorrow? Would you like to try it a while this evening?

JUROR NO. 3: Whatever the Court deems reasonable for us. We just—.

I don't know. I can't answer for everybody.

THE COURT: Well, I can appreciate that. I think I'll let you go back and try it another few minutes and see. I don't want you to argue. I don't want any emotional side at all.

I just want you to consider the matter, calm and in accordance with your understanding of what the testimony and the law is in this case.

This is a pretty difficult case, as I indicated to you at the outset. But that's the challenge that we have to our system, is reaching an understanding about what is right and what is wrong in it.

So I'm going to give you an opportunity one more time just for a few minutes to see if you can enter into any understanding or at least any discussion about the matter for a verdict in the case.

And if within the next 30 minutes or such you have not given some report I'm going to let you go home and come back tomorrow. We can't let this go as it is at this moment. It's that important.

You keep it in mind. You may again retire to the room and deliberate.

Trial Transcript at 685–87. (Emphasis ours.)

After hearing the Court's supplemental instruction, counsel for defendant moved for a mistrial, which was denied. The jury then returned to its deliberations. Approximately thirty minutes later, the jury reported to the Court that it was making progress and wished to continue deliberating. No contemporaneous record was made of this communication. At some point (we do not know when), the jury sent a note to the Court asking it about the definition of a conspiracy. Without first consulting the lawyers, the Court answered this question by referring the jury to a specific jury instruction. At 8:15 p.m., the jury again asked the Court about the definition of conspiracy. The Court referred the jury to the instructions it had already issued. It was not until 8:37 p.m. that the Court informed counsel of its actions. At 9:10 p.m. the jury returned with its verdicts: it found Robinson guilty of all counts involving Mosier, but found him not guilty of violating the civil rights of Timmy Rodell Hendrix.

## II.

 As our recitation of the pertinent facts indicates, a number of procedural irregularities occurred during the jury's deliberations. Although they are not a separate basis for appeal or reversal, they set the stage for the error which did occur. On several occasions, the District Court communicated with the jury without conferring with counsel, and off the record. Except for purely formal or immaterial purposes, this is improper. Two of these communications involved the substantive issue of the definition of conspiracy.

 The Court issued its supplemental instruction to the jury after it asked the jury how its deliberations were progressing. While this in and of itself is not improper, the inquiry should have been made on the record (by means of a written note) and only after consultation with coun-

sel. Similarly, the Court should not have called the jury into open court without first discussing it with counsel. Since the lawyers were not asked about calling the jury into open court, they also were not asked about what the jury should be told once it was available. This failure to consult the attorneys was at least partly responsible for the terms of the Court's spontaneous *Allen*[1] or "dynamite" charge to the jury. If counsel had been consulted ahead of time, an appropriate encouraging instruction might have been agreed on.

Despite these procedural irregularities, it is the content of the *Allen* charge which provides the basis for reversal. As a preliminary matter, we note that this Court has consistently held that the *Allen* charge itself is not inherently prejudicial or coercive. See, *e.g., United States v. Young,* 702 F.2d 133, 136 (8th Cir.1983). Rather, the facts and circumstances of a particular case determine whether the charge was coercive.

In *Potter v. United States,* 691 F.2d 1275, 1278 (8th Cir.1982), we indicated that an *Allen*-type instruction should contain language reflecting the following five propositions: a recognition that a majority of jurors may favor acquittal, that the government has the burden of proof beyond a reasonable doubt, that both the majority and minority should reexamine their views, that the jurors should not abandon conscientiously held views, and that the jury was free to deliberate as long as necessary. We have adhered to the *Potter* formulation in subsequent cases. In *United States v. Webb,* 816 F.2d 1263, 1267 (8th Cir.1987), for example, we reversed a conviction, in part, because of the District Court's failure to include all five of these points in the *Allen* charge.

 The District Court's *Allen* charge here contained none of the five propositions outlined in *Potter.* The Court erred by admonishing the minority to consider yielding to the majority twice, but never admon-

---

1. The name comes from the case of *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896), in which the Court

approved supplemental instructions advising deadlocked jurors to consider each others' views.

ishing the majority to consider yielding to the minority. In previous opinions we have recognized that "the primary problem with the *Allen*-type charge is the potential coercive effect upon the jurors ... who hold a minority position at the time the instruction is given." *Potter*, 691 F.2d at 1278 (citation and internal quotations omitted). In fact, one reason we recently approved a supplemental charge was because its language was "consistent with our earlier decisions requiring the *Allen* charge to direct the majority as well as the minority to reconsider its position." *United States v. Cortez*, 935 F.2d 135, 141 (8th Cir.1991), *petition for cert. filed*, No. 91–6214 (U.S. Oct. 28, 1991).

The Court here did remind the jurors "that each of you must decide the case for yourselves and all." It also stated that it wanted to provide the jurors "an opportunity, each in your own mind, to think the matter over." The effectiveness of these statements was reduced, however, by the Court's comments immediately following each of them: "[N]evertheless, justice ... must prevail. So we simply cannot overlook matters of this kind, and pass them by and not try to get them resolved[;]" and "We can't let this go as it is at this moment. It's that important." At any rate, the mere fact that the charge contained some proper language does not cure its defects. Indeed, the instruction we disapproved in *Potter* directed each juror "to reexamine his own views and change his opinion, if convinced it is erroneous" before it directed the minority alone to reconsider its views. 691 F.2d at 1279.

The Court compounded its error by leaving the impression that a hung jury, if not absolutely impermissible, is unpatriotic. It is true that Robinson was not entitled to an instruction informing the jury that it could hang, see *United States v. Arpan*, 887 F.2d 873 (8th Cir.1989) (en banc), and he did not ask for one. But it is also true that it is error to tell a jury that it cannot hang. See *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam). Thus, while we agree with the government that the District Court did not demonstrate any bias against Robinson, or

indicate that it expected a guilty verdict, the instruction tended to require the jury to reach some verdict. These statements, when combined with the Court's failure to remind all jurors to listen to the views of others, resulted in improper coercion.

■■■ The government argues that the time the jury deliberated both before and after the supplemental instruction demonstrates a lack of coercion. We disagree. The jury deliberated almost five hours before the charge. Thirty minutes after the charge the jury informed the Court it was making progress. It continued to deliberate another two and one-half hours. While the total time, and the time after the *Allen* charge, that the jury deliberates are issues to be considered in analyzing the effect of an *Allen* charge, see *United States v. Smith*, 635 F.2d 716, 721 (8th Cir.1980) (other relevant facts include content of the charge and other indicia of coercion), they are not dispositive. In *Potter*, we focused on the content of the charge, 691 F.2d at 1278, and reversed the conviction even though the jury deliberated two and one-half hours after the *Allen* charge. The cases cited by the government on this point stand for this proposition: an inference of coercion will not be drawn *solely* from the length of post-*Allen* charge deliberations. None of those cases gives decisive weight to the time the jury spent deliberating when the content of the instruction was seriously challenged.

■■■ The government's claim that Robinson's acquittal for violating Hendrix's civil rights indicates a lack of coercion is also not persuasive. It is true that in *United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir.1974), we declined to reverse a conviction on the basis of an *Allen* charge because the jury's verdict indicated "discriminating attention to the evidence rather than being a product of coercion." The discriminating attention we emphasized was reflected by acquittal on one count, conviction on one count, and a failure to reach a verdict on two others. Despite the *Allen* charge, the jury remained deadlocked on two counts. Thus, there was direct evi-

dence in *Wiebold* that the jury was not coerced into reaching a verdict.[2]

In this case, unlike *Wiebold,* the jury did not remain deadlocked on any counts after the supplemental charge. Although relevant to the analysis, acquittal on one count is not sufficient to indicate a lack of coercion with respect to the other counts in the context of this case. The Supreme Court in *Jenkins, supra,* reversed a conviction because of a coercive *Allen* charge even though the jury acquitted on one count. The little evidence we do have of the impact of the instruction, at any rate, goes against the government. The charge produced a quick (after only 30 minutes) report of progress.

 The government also points out that the instructions read to the jury before it retired to deliberate contained correct statements about the duty of jurors to consider carefully each other's position, but nonetheless to exercise an independent individual judgment in accordance with their own consciences. The supplemental charge must be viewed against this background, it says. The jury would have remembered the correct instruction given earlier and disregarded any coercive implications of the supplemental charge. The point is relevant but not persuasive. The supplemental charge, given extemporaneously by the Court and without any reference to the earlier instructions, would, we think, have a much greater psychological impact than a single instruction given routinely as part of the whole body of instructions delivered before deliberations began. The supplemental charge would naturally be prominent in the jurors' consciousness when they returned to the jury room.

Our review of the facts and circumstances of this case convinces us that the supplemental jury instruction given by the District Court coerced the jury's verdict.

### III.

Robinson raises two additional claims: the District Court improperly refused to let him re-open the proof prior to closing arguments; and the District Court erred in calculating his sentence under the Sentencing Guidelines. In view of our conclusion that the supplemental jury instruction given by the District Court requires a new trial, we need not consider these other issues.

The judgment of the District Court is reversed, and the cause is remanded for a new trial.

FAGG, Circuit Judge, dissenting.

I agree with the court that the district judge gave a flawed supplemental *Allen* charge. Nevertheless, I cannot agree that the charge coerced the jury into convicting Robinson. Because the court unnecessarily reverses the sheriff's conviction for brutally beating Mosier, a young retarded man, I dissent.

We do not reverse a conviction because of an *Allen* charge unless the charge coerced the jury. *United States v. Smith,* 635 F.2d 716, 721 (8th Cir.1980). The court correctly recognizes we consider "the facts and circumstances of a particular case [to] determine whether [an *Allen* ] charge was coercive." *Ante* at 436. We examine four factors in particular: (1) the content of the challenged *Allen* instruction; (2) the length of deliberation after the court gives the challenged *Allen* instruction; (3) the total length of deliberation; and (4) indications in the record of coercion or pressure on the jury. *United States v. Thomas,* 946 F.2d 73, 76 (8th Cir.1991); *Smith,* 635 F.2d at 721. The court bases its reversal on the first factor, the content of the instruction. *Ante* at 436. An examination of all four

2. The government's reliance on *United States v. Ringland,* 497 F.2d 1250 (8th Cir.1974), is similarly misplaced. In *Ringland,* we also refused to reverse a conviction based on an *Allen* charge partly because the "verdicts reflect[ed] discriminating attention by the jury to each of the eight counts in the indictment." *Id.* at 1253. The District Court in *Ringland,* however, issued the charge "after the jury had deliberated only approximately five hours *with no report of deadlock.*" *Id.* (emphasis added). The *Ringland* Court expressly recognized that the charge does not have coercive impact if issued before disagreement among the jurors. That is not the case here.

factors, however, reveals the *Allen* instruction did not coerce the jury.

First, I do not believe the language of the instruction alone is so coercive that reversal is required. Although the charge failed to recognize expressly that a majority of jurors might favor acquittal or that both the majority and minority should reexamine their views, the district judge reminded the jurors they must each decide the case for themselves. Even though the judge did not state the jury was free to deliberate as long as necessary, the judge did ask the foreperson whether the jurors wanted to go home and come back the next day to resume deliberations. Although the supplemental instruction did not instruct the jury the Government had the burden of proof beyond a reasonable doubt, initial jury instruction number three included this statement. Initial instruction number twenty-six also informed the jurors they should not "surrender [their] honest conviction[s] as to the weight or effect of the evidence solely because of the opinion of a fellow juror or for the mere purpose of reaching [a] verdict." After giving the supplemental *Allen* charge, the district judge reminded the jury it must consider all of the instructions. The jury had copies of the initial instructions during its deliberations. This court considers the instructions as a whole. *United States v. Arpan,* 887 F.2d 873, 874–76 (8th Cir.1989) (en banc) (approving instruction nearly identical to initial instruction twenty-six); *see also United States v. Wauneka,* 842 F.2d 1083, 1088 (9th Cir.1988) (involving *Allen* charge). I conclude the original instructions and mitigating language in the supplemental charge moderate the supplemental charge's flaws enough to allow the other three factors to prevail.

Second, the jury deliberated three hours after the court gave the instruction before reaching a verdict. We have held similar postinstruction deliberation periods demonstrated no coercive effect. *E.g., Thomas,* 946 F.2d at 76.

Third, the jury deliberated a total of eight hours following a three-day trial. We have held temporally similar situations

were not "'so disproportionate as to raise an inference that the *Allen* charge coerced the jury.'" *E.g., id.* (quoting *Smith,* 635 F.2d at 722).

Fourth, the record does not support the court's conclusion that the jury was coerced. Indeed, the record indicates the opposite. Although the jury convicted Robinson on four counts, it acquitted him on one count. Contrary to the majority's view, the jury's performance strongly suggests the instruction had no coercive effect. *See United States v. Wiebold,* 507 F.2d 932, 934–35 (8th Cir.1974) (acquittal on one count showed verdict was not the "product of a jury rushed or coerced to a judgment of guilty"); *United States v. Ringland,* 497 F.2d 1250, 1253 (8th Cir.1974) (supplemental *Allen* charge not reversible error because conviction on five of eight counts reflected "discriminating attention by jury"); *United States v. Pope,* 415 F.2d 685, 691 (8th Cir.1969) (acquittal on four counts "significant" in determining whether *Allen* charge improperly influenced jury), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970). In addition, there was strong evidence of Robinson's guilt. Robinson beat Mosier, who did not resist and begged for mercy, three different times in the presence of different county employees, including Robinson's chief deputy. During one of the beatings, Robinson wrapped his car antenna around Mosier's neck, breaking the antenna. The employees had the courage to report the incidents and to testify against Robinson at trial. Despite the testimony of these three eyewitnesses, Robinson maintained the beatings never occurred. The only person who supported Robinson's story was the deputy Robinson appointed to succeed the chief deputy who resigned after witnessing the beatings. Because there was strong evidence of Robinson's guilt, the flawed charge likely had minimal effect on the jury.

Having reviewed the totality of the circumstances in light of the four factors, I conclude the supplemental charge did not coerce the jury. In my view, the court disserves justice in this case by setting aside the jury's verdict. I also conclude

Robertson's remaining arguments are without merit. The district court did not abuse its discretion in denying Robertson's motion to reopen the evidence. *See United States v. Larson,* 596 F.2d 759, 778 (8th Cir.1979). Similarly, the district court committed no error in applying the multiple count provisions of the Sentencing Guidelines. *See* U.S.S.G. § 3D1.2(b)(1), (d) (Nov. 1989); *United States v. Moore,* 877 F.2d 651, 652 (8th Cir.1989).

Accordingly, I would affirm Robinson's conviction.